956 P.2d 1301

**Nathaniel Paul DRING,
Plaintiff/Appellee,**

v.

**Michiko DRING, Defendant/Appellant.**

**No. 19291.**

Intermediate Court of Appeals of Hawai'i.

April 30, 1998.

John S. Edmunds, Joy S. Omonaka, and Wesley D. Shimazu, Edmunds Maki Verga & Thorn, Honolulu (Valta A. Cook and Robert K. Allen, Hilo, on opening and reply briefs), on the briefs, for defendant/appellant.

Meredith Lenell, on the brief, Kailua Kona, for plaintiff/appellee.

Before BURNS, C.J., and WATANABE and KIRIMITSU, JJ.

BURNS, Chief Judge.

Defendant–Appellant Michiko Dring (Michiko or Defendant) appeals the family court's (1) August 29, 1995 Further Order After Hearing and (2) August 29, 1995 Order on Defendant's Motion for Reconsideration of Decision Announced on July 13, 1995 as Amended by Decision Announced on July 28, 1995, Filed August 2, 1995. We vacate and remand.

In this opinion, we (a) discuss the law applicable in the situation where unmarried parents enter into a written separation agreement specifying the child support payable by the noncustodial parent to the custodial parent, then separate, then reconcile and live together for three years with their children, and then separate permanently, and the custodial parent then seeks to enforce the separation agreement; (b) decide the question whether such a written separation agreement can be abandoned without the consent of the minor children who allegedly are third-party beneficiaries of the contract; (c) decide the family court's authority to order the custodial parent to pay for all or a part of the interstate transportation expenses incurred by the children when visiting the noncustodial parent pursuant to the family court's order re visitation; and (d) decide the family court's authority to award and discretion to deny a party's request for an award of attorney fees and costs.

## BACKGROUND

Plaintiff–Appellee Nathaniel Paul Dring (Ned or Plaintiff) and Michiko were married in December 1971 and divorced in September 1975. No children were born during the marriage. After reconciling in 1979, the parties lived together from 1979 until September 1990. Their two children were born during this period: Julia Michiko Dring (Daughter 1) on April 13, 1981, and Lisa Sanaye Dring (Daughter 2) on December 12, 1987.

In September 1990, Michiko and Ned again separated. On September 24, 1990 Michiko and Ned signed a written agreement (1990 Agreement) which states in relevant part:

This is an agreement to settle our separation of community property and child custody. This is a final and full settlement between Ned Dring and Michiko Dring made without coercion or malice.

Michiko is to get full custody of [Daughter 1 and Daughter 2]. Michiko is to get the $70,000. face value Treasury bond at Paine Webber, and Ned agrees to sign off on it. Michiko is to get half of the checking account. Michiko will keep the Bank of America Visa card and change the address

and be responsible for any payments effective after Sept. 23, 1990. All of the above becomes Michiko's property solely.

Ned and Michiko agree that California and Hawaii Foliage will pay Michiko a salary of $2,000. per month which is to be used to pay $1,000. per child per month child support until each child reaches the age of 18. . . .

In the event California and Hawaii Foliage because of a sale, bankruptcy, foreclosure or any other reason does not pay the $2,000. per month Ned agrees that he will pay the child support personally. When [Daughter 1] reaches age 18, the child support will be reduced to $1,000. This child support will be effective so long as the children live with Michiko and will be suspended if they live with [Ned].

Ned will keep half the checking account. Ned will keep the $115,000. commercial paper from Bank of Hawaii. Ned will keep all the stock and ownership of Calif. & Hawaii foliage that we own. Michiko will sign off ownership of the stock. Ned will keep the residence and land TMK 3rd–2–7–36–6 and the personal property on it. Ned will take the responsibility of the Martgage [sic] at Bank of Hawaii on TMK 2–7–36–6 and Michiko will sign a Quit Claim deed to the house and property stated above. All of the above are solely [Ned's] property and responsibility.

Ned will take the responsibility of filing and paying the Joint Federal and State tax for 1990.

Ned and Michiko agree that at such . . . time the children go to college they will share the costs of sending them to school.

In August 1991, Ned and Michiko reconciled and lived together with their two children continuously from September 1991 until they again separated on August 20, 1994. The two daughters thereafter lived with Michiko. On January 11, 1995, Michiko and the two daughters left Hawai'i, and they now reside in Nevada.

On January 26, 1995, Ned filed a Verified Petition for Paternity and Custody seeking an adjudication that he is the legal father of Daughter 1 and Daughter 2, an award to him

of the custody of the children, and an order requiring Michiko to pay for the support, maintenance, and education of the children. The family court's jurisdiction was based on Hawai'i Revised Statutes (HRS) Chapter 583 (1993), Hawai'i's Uniform Child Custody Jurisdiction Act.

Michiko's March 31, 1995 Answer to Verified Petition for Paternity and Custody and Counterclaim responded that it would be in the best interests of the two daughters to remain in Michiko's legal and physical custody and that Ned should be ordered to pay child support "as agreed by the agreement dated September 24, 1990."

Ned's March 17, 1995 Motion to Establish Child Support and his February 10, 1995 Motion and Affidavit Under the Uniform Child Custody Jurisdiction Act were heard on June 26, 1995. In her memorandum in support of her subsequent motion for reconsideration, Michiko's counsel wrote that

the Court did not allow the parties time to put on oral evidence. All the Court had before it was Defendant/Counterclaimant's Trial Brief re Child Custody and Child Support, Affidavit of [counsel for Michiko]; Exhibit A and, Plaintiff's Memorandum in Support of Plaintiff's Motion re Custody and Child Support and Exhibit A which was filed on the date of the hearing and a copy of which was handed to [counsel for Michiko] some five minutes before the Court hearing, and Exhibits of Plaintiff and Defendant which were stipulated to. This Court took no testimony on the circumstances surrounding the reconciliation in 1991 and the separation in 1994 nor [Michiko's] actions after separation up to the time of the filing of the Petition for paternity by [Ned].

The record supports everything that counsel wrote except the statement that "the Court did not allow the parties time to put on oral evidence." Nothing was said on the record by anybody about oral evidence or the time and opportunity to introduce it, and nothing on the record indicates that anybody objected to the court's procedure.

The family court's July 13, 1995 Order After Hearing states in relevant part:

1. The parties have stipulated to the following and the Court so holds:

a. That [Ned] is the natural father of [Daughter 1] and [Daughter 2].

b. This Court has jurisdiction over the parties and issues raised in the Verified Petition for Paternity and Custody.

c. Physical custody of the two minor children of the parties is vested in [Michiko]. . . .

. * * *

2. This Court, with the parties not stipulating, makes the following temporary order:

a. [Ned] shall have summer visitation with the two minor children beginning July 15, 1995 and continuing through July 28, 1995. For this visitation, the transportation costs shall be split equally between the parties.

* * *

3. The following issues are reserved for decision by this Court, . . . . .

a. The matter of temporary sole or joint legal custody.

b. Past child support and arrearages, if any.

c. Current child support.

d. Child visitation and the cost of transportation in conjunction with visitation.

On July 13, 1995, the family court sent a written decision to the attorneys. That decision was the basis for the family court's August 29, 1995 Further Order After Hearing that states in relevant part as follows:

*FINDINGS OF FACT*

1. The parties were married for four (4) years and lived together for approximately twenty (20) years.

2. The parties do not appear to be communicating well and the physical separation would further complicate joint legal discussions and decision.

3. The parties entered into a contract on September 24, 1990.

4. The parties reconciled after entering the agreement.

5. There is no evidence that the agreement was resurrected after the separation in 1994 and [Michiko] apparently accepted the child support provided after the date of separation without complaint and without seeking a modification or enforcement of the agreement of September 24, 1990 until [Ned's] action for paternity.

6. There is no evidence that the reasonable needs of the children after date of separation exceeded the amounts paid by [Ned] to [Michiko] for child support.

7. The Child Support Guidelines submitted by [Ned] is accepted as the correct amount for child support.[1]

*CONCLUSIONS OF LAW*

1. The parties' current situation is not conducive to joint legal custody.

2. Ordinary contract principles should apply to the parties' contract of September 24, 1990.

3. The reconciliation of the parties after the contract was an abandonment of the agreement.

4. No award for arrearages is made.

**THE COURT HEREBY ORDERS THAT:**

1. [Michiko] is awarded legal custody of the parties' two minor children, . . . .

* * *

4. [Ned] shall pay to the Child Support Enforcement Agency as and for the support of the parties' two children the sum of FOUR HUNDRED FIVE AND NO/100 DOLLARS ($405.00) per child per month, for a total of EIGHT HUNDRED TEN AND NO/100 DOLLARS ($810.00) per month. . . .

* * *

6. The parties shall equally split the costs of all awarded child visitation.

(Footnote added.)

On August 2, 1995, Michiko filed her Motion for Reconsideration of Decision An-

---

1. Plaintiff's Child Support Guidelines Worksheet states that plaintiff's monthly gross income is $3,570 and that defendant's monthly gross income is $1,679.

nounced on July 13, 1995 as Amended by Decision Announced on July 28, 1995, which states that Michiko filed the motion pursuant to Rule 59(g), Hawaii Family Court Rules and specifically asks this Court to reconsider its decision as follows:

1. Reconsider its decision concerning past child support and, after reconsideration, hold that the agreement entered into between the parties on September 24, 1990, was in full force and effect, as it relates to child support, until the Court hearing on June 26, 1995.

2. Further, that the Court order [Ned] to pay [Michiko] the difference between the amounts he paid to [Michiko] from August 31, 1994, the date of separation, and the sum of $2000 to June 26, 1995, date of hearing on this matter.

3. That this Court reconsider its decision that the parties split equally the cost of transportation of all awarded child visitation. The Court should, after reconsideration, order that [Ned] pay all costs of transportation or in the alternative that the parties pay the cost of transportation on a percentage of their respective incomes, which in this case would be 67% to [Ned] and 33% to [Michiko].

On August 29, 1995, the family court entered its Order on Defendant's Motion for Reconsideration of Decision Announced on July 13, 1995 as Amended by Decision Announced on July 28, 1995, Filed August 2, 1995, which states in relevant part as follows:

Based upon the representations and argument of counsel and the records and file herein, the Court finds as follows:

[Michiko's] contention that the Court's previous finding that [Michiko] accepted child support after August, 1994 and before [Ned's] paternity action was filed "without

**2.** Exhibit G is a typed letter dated "11/2/94" from Michiko to Ned received in evidence at the June 26, 1995 hearing. In relevant part, the letter states:

1. THE CHILD SUPPORT MONIES NEED TO BE BACK TO WHAT THE LEGAL DOCUMENT STATED., [sic] IF YOU DO NOT HAVE A COPY OF IT I HAVE. IT STATES THAT THE CHILD SUPPORT MONEY IS TO BE $2,000. NET.. [sic]
2. THE ISSUE OF THE $70,000. [sic] WHICH YOU TOOK FROM THE JOINT

.complaint" may have merit based on [Michiko's] Exhibit "G." [2] However, even if a "complaint" was made to [Ned] regarding the prior $2,000.00 child support not being paid, [Michiko] continued to accept the child support amount(s) sent by [Ned] and no agreement was reached regarding any other amount, and [Michiko] filed no action to establish or modify child support or for breach of contract.

[Michiko's] motion being limited to the evidence previously adduced, the Court concludes that even if Exhibit "G" constitutes a complaint to [Ned] about the amount of child support, it has no legal significance as to resurrecting the previous agreement or establishing or modifying child support.

[Michiko's] Motion for Reconsideration is denied.

(Footnote added.)

## STANDARD OF REVIEW

A conclusion of law "is not binding upon the appellate court and is freely reviewable for its correctness." *State v. Bowe,* 77 Hawai'i 51, 53, 881 P.2d 538, 540 (1994) (citation omitted). We review the court's conclusions of law *de novo* under the "right/wrong" standard. *Raines v. State,* 79 Hawai'i 219, 222, 900 P.2d 1286, 1289 (1995). "Under this . . . standard, we examine the facts and answer the question without being required to give any weight to the trial court's answer to it." *State v. Miller,* 4 Haw.App. 603, 606, 671 P.2d 1037. 1040 (1983). *See also Amfac Inc. v. Waikiki Beachcomber Inv. Co.,* 74 Haw. 85, 119, 839 P.2d 10, 28, *reconsideration denied,* 74 Haw. 650, 843 P.2d 144 (1992).

Findings of fact are reviewed under the clearly erroneous standard.[3] *Dan v. State,* 76 Hawai'i 423, 428, 879 P.2d 528, 533 (1994).

CHECKING ACCOUNT. IT NEEDS TO BE RESOLVED FAIRLY. . . .

**3.** The rule that an appellate court should apply an abuse-of-discretion standard in reviewing all aspects of a court's Hawai'i Rules of Civil Procedure Rule 11 determination, *Lepere v. United Public Workers 646,* 77 Hawai'i 471, 473, 887 P.2d 1029 (1995), does not apply to appellate review of other determinations.

"A finding of fact is clearly erroneous when (1) the record lacks substantial evidence to support the finding, or (2) despite substantial evidence in support of the finding, the appellate court is none the less left with a definite and firm conviction that a mistake has been made." *State v. Okumura,* 78 Hawai'i 383, 392, 894 P.2d 80, 89 (1995) (citation omitted).

It has long been the rule that the abuse of discretion standard is applicable to the review of a child support award. *Doe VI v. Roe VI,* 6 Haw.App. 629, 640, 736 P.2d 448, 456 (1987). "The family court possesses wide discretion in making its [discretionary] decisions and those decisions will not be set aside unless there is a manifest abuse of discretion." *In re Doe,* 77 Hawai'i 109, 115, 883 P.2d 30, 36 (1994).

> Under [the abuse of discretion] standard of review, the appellate court is not authorized to disturb the family court's decision unless (1) the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant; (2) the family court failed to exercise its equitable discretion; or (3) the family court's decision clearly exceeds the bounds of reason.

*Bennett v. Bennett,* 8 Haw.App. 415, 426, 807 P.2d 597, 603 (1991). In the Drings' case, however, either the 1990 Agreement or, pursuant to HRS §§ 571–52.5 and 576D–7 (Supp.1997), the Amended Child Support Guidelines applies. In either case, the family court's discretion is much less than wide.

## DISCUSSION

### 1.

HRS § 572–22 (1993) states that "[a]ll contracts made between spouses, whenever made, whether before or after June 6, 1987, and not otherwise invalid because of any other law, shall be valid."

With respect to spousal support and child support, HRS § 572–22 specifies that such contracts "shall be subject to approval by the court in any subsequent proceeding for divorce or judicial separation[.]" With respect to the division of property and debts, however, there is no such limitation.

In contrast, Hawai'i's Uniform Parentage Act states in HRS § 584–22(a) (1993) that "[a]ny promise in writing to furnish support for a child, growing out of a supposed or alleged father and child relationship, shall not require consideration and shall be enforceable according to its terms." In other words, cases under Hawai'i's Uniform Parentage Act are not subject to the limitation specified in HRS § 572–22.

Although the following quotation was written with respect to HRS § 572D–10 and premarital agreements, it also applies with respect to HRS §§ 572–22 and 584–22(a) and marital agreements and divorce agreements.

> Section 10 of the Hawaii [Hawai'i] Act specifically states that such pre-marital agreements are valid and enforceable if otherwise valid as contracts. Unless the agreement rises to the level of unconscionability, a merely "inequitable" contract is not unenforceable under contract law. Furthermore, when a premarital agreement setting forth support and property division in the event of divorce is *not unconscionable* and has been *voluntarily* entered into by the parties with knowledge of the financial situation of the prospective spouse, enforcement of the agreement does not violate the principle of a "just and equitable" award under HRS § 580–47.

*Lewis,* 69 Haw. at 500–01, 748 P.2d at 1365–66 (footnote omitted and emphasis in original).

*Epp v. Epp,* 80 Hawai'i 79, 85, 905 P.2d 54, 60 (App.1995).

 Michiko contends that HRS § 584–22(a) required the family court to enforce the 1990 Agreement. We conclude that (a) HRS § 584–22(a) applies in situations where the mother and father are not married to each other; (b) except for the element of consideration, contract principles govern the enforceability of the promise; and (c) if the promise is relevant and enforceable, the child support can be greater than but cannot be less than the amount payable in accordance with the applicable child support guidelines established pursuant to HRS §§ 571–52.5 and

**376**

576D–7 (1993).[4]

■ In the situation where, in September 1990, unmarried parents enter into "an agreement to settle our separation of community property and child custody" in which they agree to the child support payable by one to the other, and thereafter reconcile and live together with their children continuously from September 1991 until they separate in August 1994, the 1990 child support agreement is enforceable in a 1995 paternity and custody action unless (a) the 1990 child support agreement shows that it was not intended to apply to proceedings initiated after a reconciliation such as the 1991–1994 reconciliation; (b) the parties abandoned the 1990 child support agreement prior to 1995; or (c) the 1990 child support agreement is unconscionable.

■ The abandonment of a contract is a matter of intention to be ascertained from the relevant facts and attendant circumstances. The abandonment of a contract need not be expressed but may be inferred from the conduct of the parties and the attendant circumstances. A contract will be treated as abandoned when one party acts in a manner inconsistent with the existence of the contract and the other party acquiesces. 17A Am.Jur.2d *Contracts* § 543 (1991). "Abandonment need not be expressed; it may be inferred from the conduct of the parties and the attendant circumstances." *Anderson v. Oceanic Properties, Inc.*, 3 Haw. App. 350, 358, 650 P.2d 612, 618 (1982) (citations omitted). The abandonment of a contract discharges its obligations. 17A Am. Jur.2d *Contracts* § 543 (1991).

■ In Conclusion of Law No. 3, the family court concluded that the 1991–94 reconciliation of the parties and their living together with their children was *ipso facto*, as a matter of law, an abandonment of the 1990 Agreement. We hold that this conclusion is wrong because (a) the 1991–94 reconciliation of the parties and their living together was not *ipso facto*, as a matter of law, an abandonment of the 1990 Agreement, and (b) the

evidence on the record that the parties did not abandon the 1990 Agreement by or during their 1991–94 reconciliation or thereafter presents genuine issues of material fact that must be resolved by findings of fact before the family court can enter its conclusion of law deciding the abandonment issue.

**2.**

■ Michiko contends that the 1990 Agreement could not be abandoned without the consent of the minor children who are the third-party beneficiaries of the contract. We disagree that the minor children were third-party beneficiaries. We conclude that they were parties being properly represented by one of their parents.

HRS § 577–3 (1993) states in relevant part as follows:

The father and mother of an unmarried minor child are jointly the natural guardians of the child's person and property.... [W]hen the parents live apart, the court may award the guardianship to either of them, having special regard to the interests of the child.

When Ned and Michiko signed the 1990 Agreement, they were acting for themselves and as natural guardians of their children. Thus, in *Simms v. Simms*, 49 Haw. 200, 210, 412 P.2d 638, 644 (1966), the Hawai'i Supreme Court concluded that, although a minor child has the right to sue his/her parent to enforce the parent's duty to support the minor child, this is only true where the minor child's interests are not being properly represented by a parent. In the instant case, the minor children's interests are being properly represented by a parent.

**3.**

Michiko challenges the order in the August 29, 1995 Further Order After Hearing requiring that "[t]he parties shall equally split the cost of all awarded child visitation." She contends that (a) the family court is not authorized to enter such an order, and (b) if the family court is authorized to enter such

4. The fact that the promise is enforceable according to its terms does not limit the family court's discretion to order more support than promised.

*See* HRS § 577–14 (1993); HRS § 584–15 (1993).

an order, it abused its discretion because Ned "has significantly greater resources[.]"

■ HRS § 571–46(7) (1993) states in relevant part that "[r]easonable visitation rights shall be awarded to parents, grandparents, and any person interested in the welfare of the child in the discretion of the court[.]" HRS § 580–47(a) (1993) states in relevant part that "the court may make any further orders as shall appear just and equitable (1) compelling the parties or either of them to provide for the support, maintenance, and education of the children of the parties[.]" We conclude that these two statutes implicitly authorize the family court to enter orders requiring the custodial parent to pay for all or a part of the reasonable costs of implementing the family court's order re visitation.

In *Tomas v. Tomas*, 7 Haw.App. 345, 350, 764 P.2d 1250, 1254 (1988), the family court ordered the custodial-mother "to pay one-half of the children's visitation transportation expenses from Pennsylvania to Hawaii [Hawai'i] and back, thereby to that extent reducing the amount of child support available to her." This court noted that "[s]uch a reduction is neither expressly permitted nor prohibited by the ... child support guidelines." *Id.* This court decided that the noncustodial-father's obligation to pay transportation expenses incident to visitation does not constitute an exceptional circumstance authorizing a reduction of the noncustodial-father's child support obligation under the relevant child support guidelines.

■ In the instant case, the question is what are the limits, if any, of the family court's discretion to order the custodial parent to pay all or a part of the interstate transportation expenses incurred by the children when visiting the noncustodial parent pursuant to the family court's visitation schedule. Our response is as follows: (a) it is within the family court's discretion to enter such an order if the order reasonably can be complied with without decreasing the funds reasonably necessary to support the children and the custodial parent at the relevant standard of living and the order is not otherwise an abuse of discretion; (b) except in situations where it has no reasonable alternative,

the family court has no discretion to enter such an order if the order cannot reasonably be complied with without decreasing the funds reasonably necessary to support the children and the custodial parent at the relevant standard of living; and (c) where the family court enters such an order in (b) situations, the order must impact the custodial parent and the noncustodial parent in reasonable proportion to their abilities to pay. In the instant case, alternative (a) is applicable.

4.

Michiko contends that the court erred when it denied her request for her attorney fees and costs. Two theories are relevant. The first theory is that she is entitled to an award of attorney's fees under HRS § 607–14 (1993) and costs under Hawai'i Rules of Civil Procedure Rule 54(d). The former specifies in relevant part that "[i]n all the courts, in all actions in the nature of assumpsit ... there shall be taxed as attorneys' fees, to be paid by the losing party ... a fee that the court determines to be reasonable[.]" The latter specifies in relevant part that "[e]xcept when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs[.]"

■ Michiko may qualify under the first theory. In her counterclaim to Ned's Verified Petition for Paternity and Custody, Michiko sought a court order requiring Ned to pay child support "as agreed by the agreement dated September 24, 1990." If the family court validly concludes that the 1990 Agreement had not been abandoned and enforces it, Michiko will be the prevailing party in an action in the nature of assumpsit.

■ The second theory is that the court erred when it failed to award Michiko her attorney's fees and costs as authorized by HRS § 580–47(e) (1993), which states:

(e) Attorney's fees and costs. The court hearing any motion for orders either revising an order for the custody, support, maintenance, and education of the children of the parties, or an order for the support

and maintenance of one party by the other, or a motion for an order to enforce any such order or any order made under subsection (a) of this section, may make such orders requiring either party to pay or contribute to the payment of the attorney's fees, costs, and expenses of the other party relating to such motion and hearing as shall appear just and equitable after consideration of the respective merits of the parties, the relative abilities of the parties, the economic condition of each party at the time of hearing, the burdens imposed upon either party for the benefit of the children of the parties, and all other circumstances of the case.

This statute states that the family court "may" award fees and costs. "Under this statute, the family court is given broad discretion to award attorney fees and costs." *Doe v. Roe,* 85 Hawai'i 151, 164, 938 P.2d 1170, 1183 (App.1997) (citing *Mark v. Mark,* 9 Haw.App. 184, 194, 828 P.2d 1291, 1297 (1992)).

## CONCLUSION

Accordingly, we vacate the Family Court's (1) August 29, 1995 Further Order After Hearing; and (2) August 29, 1995 Order on Defendant's Motion for Reconsideration of Decision Announced on July 13, 1995 as Amended by Decision Announced on July 28, 1995, Filed August 2, 1995. We remand for further action consistent with this opinion.