**Barry L. BROWN, Appellant,**

v.

**Margaret E. BROWN, Appellee.**

**No. 89–SC–947–DG.**

Supreme Court of Kentucky.

Sept. 27, 1990.

**6**

Ruth H. Baxter, Berry & Floyd, P.S.C., Carrollton, for appellant.

Daniel L. Dickerson, Florence, for appellee.

LEIBSON, Justice.

Margaret E. Brown filed a Petition for Dissolution against her husband, Barry L. Brown, on July 20, 1980, appending to it a Property Settlement Agreement executed the same day. Exactly one year later, on July 20, 1981, Margaret went to Circuit Court with her attorney and obtained a Decree of Dissolution, incorporating by reference the Property Settlement Agreement.

Almost five years later, in June of 1986, Margaret sought enforcement of the Property Settlement Agreement through contempt proceedings and Barry filed a Motion to set aside the Agreement. Matters between the parties had come to a head when Barry discontinued payments of $200 per week as called for by the Agreement "each and every week until the petitioner reaches 65 years of age." Margaret claims these payments were to settle her interest in her husband's business, and Barry counters that the uncontested proof showed the business had no equity at the time. Simultaneously, Barry moved to set aside the Agreement alleging, inter alia, that it was unconscionable, obtained as a result of undue influence and overreaching, and signed by Barry without benefit of counsel. At a hearing on these motions in late July 1986, the court entered some preliminary findings about past due amounts which have not been challenged, found no contempt to exist because Barry lacked financial ability to pay, and suggested that the parties try to work something out on the Property Settlement Agreement.

A few days later, on August 6, 1986, apparently without the assistance of counsel, the parties entered a written agreement modifying certain terms in the original Property Settlement Agreement. This is a letter agreement, addressed to Margaret, signed and dated by both parties. Unquestionably this was a negotiated document because one portion of the typed agreement is stricken, and because each party had handwritten addendum's to the agreement which the other then signed. The principal question on this appeal is the Court of Appeals' decision that KRS 403.250(1) "prohibits the revocation or modification of any decree's provisions as to property disposition unless reopening of the judgment is justified pursuant to CR 60.02 or 60.03." But there can be no question that, if it is legal for the parties to a divorce to subsequently modify a previous divorce settlement agreement incorporated into their divorce decree, these parties have done so.

After another year passed, on August 13, 1987, Margaret once again took up the dispute, filing a new rule to show cause why Barry should not be held in contempt for failing to abide by the original Property Settlement Agreement filed on July 20, 1981. Barry responded by filing the letter agreement entered August 6, 1986, referred to above, with his Affidavit establishing that he was not in contempt when the terms of this subsequent modification are applied. The key parts of the modification are: (1) Barry is to pay "$200/week only when the net worth of the factory is above $50000," and (2) "[i]n the event of a sale of the factory, anything above the original investment, adjusted for inflation, will be split between us on the ratio of 20% for you and 80% for me with a maximum to you of $50000."

At this point the trial judge disqualified, and in due course a replacement was appointed. Finally, in March 1988, an evidentiary hearing was held, and in May 1988, the Findings of Fact, Conclusions of Law and Order, which are the subject of this appeal, were entered. The critical part of this decision is found in paragraph 3 of the Conclusions of Law:

"The agreement entered into by the parties on August 6, 1986, constitutes a partial modification of the Property Settlement Agreement filed herein. Specifically, as per the separate maintenance terms of the August 6, 1986, Agreement, respondent shall pay to petitioner the sum of $200.00 per week only when the net worth of this factory is above $50,-000.00."

Margaret appealed, asserting the written agreement settling their differences by modifying the original agreement was invalid because only the court has power to modify such an agreement. The Court of Appeals sustained her position on this, and reversed the trial court. We have accepted discretionary review of the issue, and, for reasons to be stated, we now reverse the Court of Appeals and affirm the trial court on this issue.

The trial court's final Order of May 24, 1988 also rejected Barry's claim that, without regard to the subsequent modification, the original Property Agreement filed on July 20, 1981, should be set aside, the court stating the Agreement was "entered into by competent adults," and the "evidence [does] not establish any undue influence or overreaching," and it was "not unconscionable." Barry cross-appealed this portion of the trial court's final order, and lost in the Court of Appeals. Because of our decision upholding the validity of the subsequent written modification, any disagreement about whether the original Property Settlement Agreement should be set aside is moot. Although we have accepted discretionary review, we will not discuss this matter in this Opinion.

The parties had continued to live together in the interim. Questions as to whether there had been a reconciliation affecting the Agreement and whether the divorce was obtained suddenly and surreptitiously are unnecessary for us to consider in deciding this case.

No one questions the right of parties *sui juris*, under ordinary circumstances, to settle their legal differences in a civil action by agreement. This is so regardless of whether such settlement is entered into before the suit goes to trial or after a final judgment has been entered in the matter, and may be done without first consulting the court for permission. Indeed, as a general rule, the court encourages voluntary, arms-length negotiated settlement, as opposed to protracted litigation, and it would appear that in late July 1986, the original trial judge in this case actually suggested that the parties consider this course of action. Thus, the question becomes whether there is something in the divorce statutes that mandates a different rule when the subject matter is the disposition of marital property in a divorce proceeding.

 Margaret's counsel has insisted, and the Court of Appeals agreed, that under KRS 403.250 the parties can modify their agreement with regard to property disposition only by reopening the judgment under CR 60.02; that because Barry did not petition the court to do so "there was no modification of the Agreement." We

find nothing in KRS 403.250 to justify this result. This statute provides the method by which a party may seek court ordered modification or termination of provisions for maintenance, support and property disposition, but it nowhere specifies, expressly or implicitly, that such method is exclusive of the parties' right to effect the same result by a voluntary, arms-length settlement if, when later contested, such a settlement is proved to the satisfaction of the trial court with reasonable certainty. We have so held in deciding on a post-judgment modification of child support in at least three cases: *Ruby v. Shouse*, Ky., 476 S.W.2d 823 (1972); *Story v. Story*, Ky., 423 S.W.2d 907 (1968); and *Davis v. Davis*, Ky., 431 S.W.2d 866 (1968). These three cases involved *oral* modification of a judgment for child support, as contrasted with the *written* modification in the present case where veracity is not at issue. The question in these cases, when the subsequent oral modification was challenged in subsequent court proceedings, was whether the trial court had found that "the modification had been established with reasonable certainty," and whether "it was equitable under the circumstances." *Ruby v. Shouse*, 476 S.W.2d at 825.

Although our Court has decided no similar cases since the effective date in 1972 of the new divorce code, our so-called no fault divorce law, the Kentucky Court of Appeals has considered the matter in *Whicker v. Whicker*, Ky.App., 711 S.W.2d 857, 859 (1986), and reached the same decision under the new law that we reached under the pre–1972 law. *Whicker* considers an oral modification of an agreement for child support, and states:

"[W]e hold that oral agreements to modify child support obligations are enforceable, so long as (1) such agreements may be proved with reasonable certainty, and (2) the court finds [when subsequently challenged] that the agreement is fair and equitable under the circumstances."

As Margaret's counsel points out, *Whicker* notes that "[p]arties who decline to use [prior court approval by] KRS 403.250 '... run the risk of having their private agreements declared invalid by a court when the parties attempt to have those agreements judicially enforced.'" That is because the equitable nature of divorce litigation has been preserved by the statutes relating thereto, so that such litigation, whether terminated by judgment or agreement, is opened to subsequent modification if the party seeking modification can prove the terms of the judgment or agreement are unconscionable. It is this equitable aspect of divorce litigation which is preserved by KRS 403.250.

Margaret's counsel argues that the rule in *Ruby v. Shouse* and *Whicker v. Whicker* does not apply to a property settlement payable in future installments, as it does to child support, because of KRS 403.180(6). This would be giving KRS 403.180(6) an opposite effect from the one intended. There is an exception to this equitable principle just stated provided for in KRS 403.-180(6), but its purpose is to expand rather than to limit the parties' ability to settle. KRS 403.180(6) states:

"Except for terms concerning the support, custody, or visitation of children, the decree may expressly preclude or limit modification of terms if the separation agreement so provides. Otherwise, terms of a separation agreement are automatically modified by modification of the decree."

Thus, KRS 403.180(6) states that "[e]xcept for terms concerning the support, custody, or visitation of children," by expressly doing so the parties may settle their affairs with a finality beyond the reach of the court's continuing equitable jurisdiction elsewhere provided. Since the original Agreement now under consideration made no such express provision for finality, it follows that there was no such limitation on subsequent modification. Simply stated KRS 403.180(6) has no bearing on this case.

As we have recently stated in other cases, in different context, the policy of the law is to encourage settlement in divorce litigation, whether prejudgment or post-judgment, and more particularly, to discourage as counterproductive to the wel-

fare of the parties unnecessary post-judgment litigation. *Cf. Likins v. Logsdon,* Ky., 793 S.W.2d 118 (1990); *Quisenberry v. Quisenberry,* Ky., 785 S.W.2d 485 (1990). A necessary corollary of this principle is, where honest disagreement exists post-judgment as to whether the terms of a previous decree should be modified, courts approve of settlement as the method to adjust such disputes. We find nothing in the statutes to require judge resolution as opposed to voluntary settlement, openly and fairly negotiated. The statutes leave open to a party who has been overreached in any such settlement the right to further litigate upon proof of unconscionability. But there is nothing in the statutes to suggest, as the Court of Appeals has decided, that KRS 403.250(1) denies the right to settle a post-judgment dispute, and requires a party seeking modification to go to court to reopen the judgment "pursuant to CR 60.02 or 60.03."

In this case the trial court has found that the parties did in fact modify the Property Settlement Agreement incorporated in the 1981 divorce by their August 6, 1986 Agreement, and we perceive no issue regarding its unconscionability.

Therefore, we affirm the final order of the trial court and reverse the decision of the Court of Appeals setting it aside.

All concur.