**JACK, n.k.a. Chickerella, Appellant,**

v.

**JACK, Appellee.**

[Cite as *Jack v. Jack* (2000), 139 Ohio App.3d 814.]

Court of Appeals of Ohio,
Seventh District, Jefferson County.

No. 97–JE–35.

Decided Sept. 20, 2000.

*Patrick J. Howard*, for appellant.

*Frank J. Bruzzese*, for appellee.

Cox, Presiding Judge.

This matter presents a timely appeal from a decision rendered by the Jefferson County Common Pleas Court, entered on April 17, 1997, following a remand from this court. After off-setting various credits, the trial court ordered that petitioner-appellee, Otto A. Jack, Jr., reimburse petitioner-appellant, Jean Heininger Jack, n.k.a. Jean M. Chickerella, the sum of $1,647.77 to defray the cost of a college education for the parties' daughter.

The parties were granted a dissolution of their marriage on June 9, 1976. At the time of the dissolution, the parties' only child, a daughter, was approximately ten months old. Pursuant to Article 3 of the parties' original separation agreement, appellee was required to pay appellant $300 per month in child support until the child reached age eighteen or was emancipated. In accordance with Article 8, appellee agreed to provide a college education for the parties' daughter and pay necessary expenses, including tuition, books, room and board, provided that she was not married and that she completed her education as a full-time student within five years from the date of her high school graduation. Pursuant to Article 10, appellee was to maintain hospitalization for the child. The parties have been back to court numerous times since 1976 for purposes of modifying the original separation agreement with regards to the allocation of parental rights and responsibilities and child support.

On June 6, 1994, the trial court filed an agreed entry evidencing that both parties assented to appellee's payment of $78.40 as complete and final payment of any outstanding child support and terminating appellee's child support obligation as of June 3, 1994.

On January 12, 1996, appellant filed a motion seeking an order of contempt against appellee. Specifically, appellant complained that appellee had failed to pay certain medical expenses incurred on behalf of the child and, that he had failed to pay for the child's college expenses, including tuition, books, room and board. Upon due consideration, the trial court filed its journal entry on February 16, 1996, overruling appellant's motion.

The trial court determined that pursuant to *Rohrbacher v. Rohrbacher* (1992), 83 Ohio App.3d 569, 615 N.E.2d 338, medical expenses are considered child support. As such, the trial court indicated that generally it would be precluded from utilizing its contempt powers relative to the support order since the child was no longer a minor. However, the trial court noted that appellant was not

precluded from " * * * bringing an action against the Husband for payment of back support so as to have any back support owing reduced to judgment for which a garnishment or execution may issue." (Citations omitted.)

In exercising its discretion, the trial court also found that its previous order of June 6, 1994, wherein the parties agreed that appellee's obligation to pay further support would be terminated upon a final payment of $78.40, was not *res judicata* as to appellee's liability for the medical expenses in question due to sufficient differences in the respective claims and issues.

In this regard, the trial court concluded that appellee was responsible for the medical expenses at issue and ordered him to reimburse appellant the sum of $2,139.20. The trial court also determined that because appellee continued to make monthly support payments subsequent to the child attaining majority, the "equities of the case" justified a credit to appellee for the resulting $3,048.40 overpayment. Upon applying such credit, the trial court ordered that appellant refund appellee the total sum of $909.20.

In assessing appellant's claim for reimbursement of college expenses, the trial court set forth a well-reasoned and equitable contractual analysis of the parties' original separation agreement. The trial court held that due to the vague and overly broad language contained within said agreement regarding this issue, it had the authority to clarify terms and conditions, consider the intentions of the parties and establish the equities between them. Due to the fact that the child was only ten months old at the time of the original separation agreement, the significant change in the parties' financial situations since that time and the parties' inability to agree upon the intent of the relevant clause, the trial court was forced to use its discretion in fashioning an equitable interpretation thereof.

The trial court concluded that appellee was obligated to pay for the child's books and computer, as well as tuition, room and board expenses not to exceed a set amount, as calculated by using the average of the same itemized costs as would have been incurred at Ohio State University and Ohio University during a similar period of time. Furthermore, the trial court determined that appellee was entitled to a credit for an expected tuition refund to be received by appellant or the child, and a credit of $2,600 for the amount of a student loan secured by the child and principally used to purchase an automobile. In furtherance of its order, the trial court required that "[c]ounsel shall put together the appropriate debits and credits in order to determine whether the Wife is entitled to any reimbursement from the Husband and, if so, in what amount."

Upon appeal from the trial court's February 16, 1996 journal entry, this court held that such order was not final as it did not conclude the action relative to college costs and whether reimbursement was appropriate. This cause was then

remanded to the trial court with instructions to fully and finally settle the issue of college cost reimbursement.

On remand, the trial court considered the respective costs of attendance at Ohio University and Ohio State University during the period of time that the parties' daughter attended Virginia Tech. The average of such costs was utilized in determining an Ohio based education cost.

Pursuant to its journal entry filed April 17, 1997, the trial court found that appellee was responsible for his daughter's computer in the amount of $1,971.11, books in the amount of $1,635.95 and average tuition costs in the amount of $11,856.41. These sums represented costs for the time period during which the parties' daughter remained a student at Virginia Polytech Institute. The trial court also reaffirmed appellee's responsibility to pay for his daughter's medical expenses in the amount of $2,139.20. Appellee's financial responsibility thereby totaled $17,602.67.

Against the amount owed, the trial court credited appellee with the following: student loan proceeds in the amount of $2,600.00, which was used by the parties' daughter to purchase a vehicle instead of paying for school; the amount of $10,306.50, which was actually paid by appellee for tuition; and, the sum of $3,048.40, which was overpaid by appellee for child support. The credits which the trial court allotted to appellee totaled $15,954.90, leaving a deficiency of $1,647.77.

Thus, the trial court ordered that appellee pay the sum of $1,647.77 to appellant. This appeal followed.

Appellant sets forth five assignments of error on appeal.

Appellant's first assignment of error alleges:

"The trial court erred as a matter of law in finding that the contempt powers of the court could not be utilized to enforce payment of medical support arrearages owed for the benefit of a minor child once the child for whom medical support is owed has reached the age of majority."

Appellant maintains the trial court wrongly concluded in its February 16, 1996 order that a party cannot bring a contempt action for non-payment of support after a minor child has reached the age of majority. Appellant seeks to hold appellee in contempt for non-payment of uninsured medical expenses incurred prior to the daughter's graduation from high school.

In reviewing a trial court's decision in domestic relations matters, an appellate court must uphold the decision absent an abuse of discretion. *Booth v. Booth* (1989), 44 Ohio St.3d 142, 144, 541 N.E.2d 1028, 1030–1031. An abuse of discretion constitutes more than an error of law or judgment; it implies that the

trial court's attitude was unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 5 OBR 481, 482–483, 450 N.E.2d 1140, 1142. Consequently, an appellate court may not substitute its judgment for that of the trial court unless, considering the totality of the circumstances, the trial court abused its discretion. *Holcomb v. Holcomb* (1989), 44 Ohio St.3d 128, 131, 541 N.E.2d 597, 599–600. Further, an appellate court should not independently review the weight of the evidence in the majority of cases but rather, should be guided by the presumption that the trial court's findings are correct. *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846, 849.

■ The controlling law on the issue presented by appellant is found in *Cramer v. Petrie* (1994), 70 Ohio St.3d 131, 136, 637 N.E.2d 882, 886–887, wherein the Ohio Supreme Court held:

" * * * an obligation to pay child support is not a 'debt' within the meaning of that term in Section 15, Article I of the Ohio Constitution. Because this obligation does not fall within the scope of Section 15, Article I, an order to pay child support may be enforced by means of imprisonment through contempt proceedings even after the child who is the subject of the order is emancipated."

However, as appellee aptly points out, R.C. 3113.215 includes the payment of medical expenses within the definition of child support. Given the numerous modifications to the original separation agreement sought by the parties and granted by the trial court, R.C. 3113.215 was applicable at the time of the trial court's last order addressing the allocation of parental rights and responsibilities and child support, filed May 28, 1992. Thereafter, both parties executed an agreed entry, filed by the trial court on June 6, 1994, wherein appellee was to pay $78.40 as full and final payment of any outstanding child support obligation.

R.C. 3113.215(B)(5)(f) provides, in relevant part, that "[t]he court shall not order an amount of child support for reasonable and ordinary uninsured medical or dental expenses in addition to the amount of the child support obligation determined in accordance with the schedule." In finding that appellee was required to reimburse appellant the sum of $2,139.20 for their daughter's medical expenses, the trial court essentially overcharged him by mandating that he be responsible for such expenses in contravention of R.C. 3113.215. Nonetheless, appellee does not complain about the trial court's order and appellant was provided a benefit.

■ In fashioning its order based upon the equities in this case, the trial court then recognized that appellee continued to pay child support beyond his obligation to do so and properly credited him with the amount of his overpayment. Upon off-setting the amount which the trial court determined appellee owed for

medical expenses by his overpayment in child support, the trial court appropriately concluded that *appellant* owed appellee the sum of $909.20.

Appellant cannot now be heard to complain on appeal concerning the trial court's decision in this regard. She initiated the action for contempt against appellee and raised the issue of his alleged failure to pay the uninsured medical expenses for the parties' daughter. Even if it was within the province of the trial court to find appellee in contempt on this issue and penalize him accordingly, the trial court's ruling did not prejudice appellant and was, in effect, to appellant's financial benefit, contrary to the dictates of R.C. 3113.215. Given the factual circumstances presented in this case, it cannot be said that the trial court acted arbitrarily by thereafter considering the equities involved and granting appellee a credit for an overpayment in child support.

Moreover, as *both* parties agreed to the June 6, 1994 entry, wherein it was acknowledged that appellee only owed $78.40 for child support through their daughter's date of graduation, appellant cannot now argue on appeal that appellee should have been held in contempt for uninsured medical expenses incurred by the daughter while she was a minor as such expenses constitute a portion of child support by definition. As such, the trial court did not abuse its discretion.

Appellant's first assignment of error is found to be without merit.

Appellant's second assignment of error alleges:

 "The trial court erred in finding that the petitioner-appellee's duty to support his minor child ended when she became eighteen (18) years of age, when the parties had previously modified the separation agreement to require the petitioner-appellee husband to pay cash child support until the minor child had graduated from high school when the child's graduation did not occur until after her eighteenth (18th) birthday."

Appellant submits that Article 3 of the parties' original separation agreement required appellee to pay child support "until the minor reaches the age of 18 years *or* is emancipated." (Emphasis added.) As such, appellant contends that "emancipation" did not occur until after the parties' daughter completed high school, and appellee was thereby responsible to pay child support until the date of the child's graduation. In furtherance of her argument, appellant maintains that the agreed entry filed on June 6, 1994, extended appellee's child support obligation to June 3, 1994, the date the parties acknowledged such obligation would terminate, and the date of the child's graduation from high school. Consequently, appellant concludes that appellee was not entitled to a credit for any alleged overpayment in child support.

The parties' separation agreement provided for the termination of appellee's child support obligation upon alternative contingencies, either the child reaching age eighteen *or*, becoming emancipated. As the trial court appropriately noted, the term "emancipation" was not defined within said separation agreement. Appellant concedes that an "emancipated" child is defined in Black's Law Dictionary (5 Ed.1979) 468, as "a person under 18 years of age who is totally self-supporting." Clearly, the parties' child was not self-supporting when she turned eighteen years old. Therefore, appellee's duty to pay child support necessarily terminated upon the alternative contingency, when the child reached age eighteen.

Contrary to appellant's argument, no subsequent agreement between the parties specifically modified the language in question, nor was "emancipation" ever defined. Inasmuch as the parties' separation agreement contained no clear language in this regard, the trial court properly and equitably interpreted it the same in finding that appellee's child support obligation terminated when the child reached age eighteen. Given our discussion under appellant's first assignment of error, it was well within the discretion of the trial court to consider the equities involved in granting appellee a credit for an overpayment in child support.

Appellant's second assignment of error is found to be without merit.

Appellant's third, fourth and fifth assignments of error have a common basis in law and fact, will therefore be discussed together and allege respectively as follows:

"The trial court abused its discretion when the trial court unilaterally modified article # 8 of the June 9, 1976 separation agreement to retroactively limit the husband's obligation to pay tuition, room and board and books to an average of rates for tuition and room and board costs as charged by the Ohio State University and Ohio University during the time Kristine Jack attended Virginia Polytechnic Institute.

"The trial court lacked jurisdiction to modify article # 8 of the separation agreement without the consent of Kristine Jack after Kristine attained her age of majority.

"The trial court erred and abused its discretion in giving the respondent husband credit for a student loan incurred by the parties' daughter when the student loan in question was incurred solely by the daughter for college related expenses and the loan is being repaid by the daughter."

Appellant first argues that the parties never independently altered the terms contained within Article 8 of their original separation agreement, nor was the language set forth in such article ambiguous. Therefore, appellant maintains that the trial court had no authority to unilaterally modify appellee's contractual

obligation under Article 8 of the separation agreement, which required him to pay for his daughter's college tuition, books, room and board expenses. Appellant also complains that the trial court abused its discretion by averaging the costs of Ohio State University and Ohio University for the same period of time the parties' daughter attended Virginia Polytech Institute to reach an Ohio based education cost.

Next, appellant submits that once the parties' daughter reached age eighteen, thereby becoming an adult child, the trial court lost jurisdiction to modify the third-party beneficiary provisions of Article 8 without the adult child's consent.

Finally, appellant contends that the trial court abused its discretion by granting appellee a credit upon his obligation to pay for the adult child's college education in the amount of $2,600, representing student loan proceeds. Appellant avers that although such funds were utilized primarily by the adult child to purchase a vehicle, any credit of these funds should have been granted to her as opposed to appellee.

■ From a thorough review of the testimony offered before the trial court on February 5, 1996, it is clear that both parties individually and separately discussed college with their daughter, but never discussed it with each other. Appellee admittedly preferred that his daughter attend an Ohio college for a variety of reasons. However, the parties' daughter, who had reached adulthood, convinced appellee that her education would be better served if she attended Virginia Polytech Institute in Virginia.

The parties' daughter communicated a proposed agreement to appellee whereby appellant would be responsible for room and board and other miscellaneous expenses, if appellee would agree to pay her tuition costs. The parties' daughter testified she understood, at the time of her proposed agreement to appellee, that the cost of tuition at Virginia Polytech Institute alone would exceed the cost of tuition, room and board, books and miscellaneous expenses at an Ohio state-supported college. Upon appellee's eventual agreement to pay tuition at Virginia Polytech Institute, the parties' daughter communicated this arrangement to appellant.

When the parties' daughter began to perform poorly at Virginia Polytech Institute and appellee again urged her to return to Ohio, she and appellee fashioned a further agreement whereby he would concede to continue paying her tuition only upon her attaining a 2.0 grade point average. While the parties' daughter admitted that in some respects, she misled both appellant and appellee as to their responsibilities pursuant to the altered college expense agreement, she acknowledged that she wanted to go to a more expensive, out-of-state college and fully consented to the payment arrangement.

Appellant acknowledged that the parties' daughter conveyed to her the college financial arrangement established with appellee and that she did, in fact, meet her share of the payment obligation. Appellant testified that on no occasion regarding this issue did she contact appellee to object to the agreement reached between he and the parties' daughter. Appellant further conceded that the parties' daughter had reached adulthood when she established the college financial arrangement with appellee. Finally, appellant admitted that at the time she and appellee entered into their original separation agreement, there was never any discussion concerning what type of college the parties' daughter should attend or where such college should be located.

Appellee likewise testified that at the time he entered into the original separation agreement with appellant, he never contemplated the parties' daughter attending an out-of-state or private college. Appellee also explained that the parties never specifically discussed the cost of a college education at the time they entered into their separation agreement.

Article 8 of the parties' original separation agreement states:

"Husband agrees to provide a college education for Kristine and pay the following necessary expenses, to-wit: tuition, books, room and board, provided that she is not married and completes her education as a full-time student within five (5) years from graduation from high school."

It is uncontroverted that the parties' daughter was a third-party beneficiary of the original separation agreement. *Smith v. Smith* (1964), 7 Ohio App.2d 4, 36 O.O.2d 27, 218 N.E.2d 473. As such, the beneficial provisions of the separation agreement could not be modified without the consent of the parties' daughter. (See *Smith, supra* and *Gingery v. Gingery* (Jun. 26, 1992), Mahoning App. No. 90–C.A.–185, unreported, 1992 WL 150269). The court in *Rohrbacher, supra,* likewise held that although a trial court has jurisdiction to alter provisions in an agreement which relate to a child's college education during such child's minority and upon proper motion or consent of the parties, the trial court is without jurisdiction to modify such provisions without consent of the parties' child upon such child reaching the age of majority.

Based upon the testimony presented by the parties' daughter in the case *sub judice,* it is clear that upon becoming an adult child, she consented to the college financial arrangement established with appellee. Thus, appellant's suggestion that the trial court lacked jurisdiction to modify the provisions contained within Article 8 of the parties' original separation agreement because the parties' adult child did not consent to such modification, is not well taken.

As recognized by the court in *Forstner v. Forstner* (1990), 68 Ohio App.3d 367, 588 N.E.2d 285, a separation agreement is a contract and its

interpretation is a matter of law, subject to the same rules of construction as other contracts. Thereby, as appellant acknowledges, when the terms of a separation agreement are confusing or ambiguous, a trial court is afforded broad discretion in clarifying those terms and may resolve disputes by considering not only the parties' intent with regards to those terms, but also the equities involved in each particular case. *Rohrbacher, supra; Robinson v. Rodi* (1998), 129 Ohio App.3d 550, 718 N.E.2d 504.

In interpreting the provisions contained within Article 8 of the parties' original separation agreement, the trial court reasoned:

"In this case, it is clear to the Court that when the agreement was made that neither party contemplated Kristine attending an out-of-state school. Unfortunately, neither party discussed this between themselves so as to avoid what later happened and what brings them before the Court at this time. The Husband's understanding from Kristine was that the Wife agreed to pay the room, board, and books and acted accordingly when Kristine first began school. Under the facts presented it is the opinion of the Court that the language contained within the Separation Agreement with respect to the payment for a college education is overly broad and vague. The parties never agreed to anything specific with respect to the costs to be expended, neither party had any idea as to what their financial circumstances would be 18 years later when Kristine would start school, nor did they contemplate or discuss the type of school that she would attend. Because of the general and overly broad language contained therein the Court is of the opinion that it has the authority to clarify the terms and conditions of the Agreement, consider the intention of the parties, and establish the equities between them. *Rohrbacher v. Rohrbacher, supra; In re Dissolution of Marriage of Seders* (1987), 42 O.App.3d 155 [536 N.E.2d 1190]; *Forstner v. Forstner* (1990), 68 O.App.3d 367 [588 N.E.2d 285]; *Blakemore v. Blakemore* (1983), 5 O.S.3d 217 [5 OBR 481, 450 N.E.2d 1140]."

This court has previously recognized in *Chickerella v. Jack* (Jan. 17, 1997), Jefferson App. No. 96–JE–10, unreported, 1997 WL 16173, that because of the general and overly broad language contained within Article 8 of the parties' original separation agreement, the trial court "properly ascertained that it had the authority to clarify the terms and conditions of the original agreement, consider the intentions of the parties and establish the equities between them." (Citation omitted.) We also found that in assessing appellant's claim for reimbursement of college expenses for the parties' daughter, the trial court "set forth a well-reasoned and equitable contractual analysis" of the parties' original separation agreement.

As each case must be reviewed upon its own particular factual circumstances, in light of the totality of those circumstances, we cannot say that the trial court

abused its discretion in clarifying the provisions contained within Article 8 of the parties' original separation agreement or in averaging the costs of Ohio State University and Ohio University for the same period of time the parties' daughter attended Virginia Polytech Institute, to reach an Ohio based education cost.

Notwithstanding the fact that the parties' daughter clearly consented to the college financial arrangement established with appellee, the trial court appropriately found that any modification entered into between appellee and the parties' daughter had no legal effect given the fact that the parties' daughter was unaware of the exact language contained within the parties' original separation agreement on this issue. Absent such knowledge, there could be no "meeting of the minds" as is required in establishing a valid contract. Therefore, the trial court was left to consider the original intent of the parties on the issue of financial responsibilities concerning the college education of the parties' daughter and the equities in this case.

It is unrefuted that neither party contemplated their daughter attending an out-of-state college at the time they entered into the original separation agreement. It is likewise unrefuted that no discussion was had between the parties at the inception of the separation agreement as to specific limitations and financial expectations surrounding the college education of the parties' daughter. Further, by her own testimony, appellant had knowledge of and acquiesced to the payment provided by appellee with regards to the college expenses incurred by the parties' daughter and paid that amount which was allegedly her responsibility, all without any complaint to appellee.

As we have previously stated, the language contained within the parties' original separation agreement on this issue was ambiguous, overly broad and general. As such, the trial court was well within its discretion to consider the intent of the parties and the equities in this case. Having set forth a well-reasoned and equitable contractual analysis, given the totality of the particular factual circumstances in this case, it cannot be said that the trial court abused its discretion in clarifying the provisions set forth in Article 8 of the parties' original separation agreement or in averaging the costs of Ohio State University and Ohio University for the same period of time the parties' daughter attended Virginia Polytech Institute, to reach an Ohio based education cost.

Finally, in determining that appellee was responsible for the payment of tuition, room, board and books based upon the cost of attendance at a state college in Ohio, it was well within the province of the trial court to consider any credits to which appellee may be entitled against this obligation. Contrary to appellant's claim that appellee should not have been granted a credit of $2,600, representing a student loan which was obtained by the parties' daughter and subsequently utilized to purchase a vehicle, it was again well within the trial

court's discretion to consider this amount in establishing the equities between the parties. The trial court charged appellee with the responsibility of paying for the college expenses incurred by the parties' daughter from the point in time that she entered Virginia Polytech Institute until she voluntarily ceased attending such college. Given the factual circumstances in this case and given that the $2,600 student loan was not utilized for its intended purpose, the trial court did not abuse its discretion in granting appellee a credit in that amount against his total obligation on the college expenses incurred by the parties' daughter.

In light of the foregoing, the totality of the particular facts and equities presented in this case, we do not find that the trial court abused its discretion in any regard concerning its decision on the issue of college expenses.

Appellant's third, fourth and fifth assignments of error are found to be without merit.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

GENE DONOFRIO and VUKOVICH, JJ., concur.