**Sammye Sharen Walden PURSLEY, Appellant,**

v.

**William Hoyne PURSLEY, Appellee.**

**No. 2001–SC–0936–DG.**

Supreme Court of Kentucky.

Sept. 23, 2004.

David Lewis Williams, Burkesville, Counsel for Appellant.

B. Mark Mulloy, Louisville, Counsel for Appellee.

KELLER, Justice.

## I. ISSUES

Under the parties' Settlement Agreement ("Agreement"), William Hoyne Pursley ("William Pursley") agreed to pay child support greatly in excess of the Kentucky Child Support Guidelines and of his children's reasonable needs. For that reason alone, the Court of Appeals held that the Agreement's child support provisions were unconscionable. Are child support provisions in a settlement agreement unconscionable solely because they require support greatly in excess of the Guidelines or the children's reasonable needs? Because we hold that parents may agree to provide child support beyond their legal obligations, we reverse the Court of Appeals and uphold the trial court's finding that the Agreement's child support provisions are not unconscionable and, thus, enforceable.

The trial court ruled that Sammye Sharen Walden Pursley ("Sharen Pursley") is not entitled to prejudgment interest on child support and maintenance arrearages owed by William Pursley. The Court of Appeals agreed, ruling that the trial court acted within its discretion in denying prejudgment interest. Was the allowance of interest on the arrearages within the discretion of the trial court? Because we hold that prejudgment interest on child support and maintenance payments accrues from the day each payment becomes due under the Agreement or under the trial court's temporary support and maintenance order-making the award of interest *not* discretionary-we reverse the Court of Appeals and remand to the trial court with directions to award interest on the arrearages.

## II. BACKGROUND

In 1991, William Pursley filed a petition for dissolution of his marriage to Sharen Pursley. With the assistance of a lawyer, William and Sharen Pursley ("the Pursleys") negotiated an agreement settling the disposition of their property, maintenance, custody of their two children, support, and visitation. The trial court incorporated the Pursleys' Agreement into a decree of dissolution entered later that year. Under the Agreement, Sharen Pursley was awarded custody of the parties' children, and William Pursley agreed to pay "30% of all of his income from his salary and bonuses as evidenced by his federal income tax return ... as child support for the minor children of the parties." The payments for the children would continue until such time as they turned eighteen (18) or graduated from college or graduate school, whichever was latest. He also agreed to pay the cost of undergraduate and graduate educations for the children at any school that they may choose in the United States. Addi-

tionally, he agreed to maintain the children's medical and health insurance and to pay any medical and dental expenses not paid by insurance. The Agreement also provided that William Pursley would pay 10% of his income as maintenance to Sharen Pursley for life, unless she remarried. The Agreement stated that the total of William Pursley's salary and bonus at that time was $135,000.00 and that child support would be "30% of the net proceeds."

William Pursley made some payments in accordance with the Agreement. In 1992, however, Sharen Pursley sought relief from the trial court for William Pursley's failure to pay child support and maintenance due under the Agreement. In 1993 and obviously in response to Sharen Pursley's efforts to enforce the payment of child support and maintenance, William Pursley challenged the validity of the Agreement on the grounds that the trial court did not have jurisdiction when it entered the decree because neither of the parties had lived in the Commonwealth for 180 days prior to its entry.[1] This issue was not resolved until 1996 when the trial court, having decided it had lacked jurisdiction to enter the decree in 1991,[2] voided the decree[3] and entered a decree nunc pro

tunc as of May 1992, reasoning that the jurisdiction requirement had been satisfied by that date.[4]

In the interim, William Pursley sporadically complied with his support obligations under the Agreement and Sharen Pursley continued to pursue enforcement proceedings. In 1995, the trial court entered a temporary maintenance and support order directing him to pay $1,600.00 per month (support of $1,200.00 and maintenance of $400.00). William Pursley also failed to fully comply with the temporary order. The trial court dismissed the case in 1998 for inactivity the previous year, but reinstated it at Sharen Pursley's request later in 1998.

The matter finally proceeded to trial in the summer of 1999, and the trial court found that the Agreement was not unconscionable and, therefore, enforceable. In later proceedings, the trial court found that William Pursley was in arrears in his child support and maintenance payments in the amount of $348,535.86 (a calculation based on his net income from his tax returns), but that the arrearages would bear postjudgment interest only.

1. KRS 403.140(1)(a).

2. *But see Clements v. Harris*, Ky., 89 S.W.3d 403, 405 (2002) ("[T]hough the trial court acted erroneously in finding Leroy to be a resident of Kentucky, the decree of dissolution is not void.").

3. The trial court had personal jurisdiction over the Pursleys when the 1991 decree was entered, and William Pursley's motion to void the decree only questioned the trial court's jurisdiction to dissolve the marriage, but not its authority to award custody and child support. Regardless, the trial court voided the decree as well as its approval of the Agreement.

4. Although certainly questionable, the issue of whether it was proper for the trial court to enter the decree nunc pro tunc is not raised

in this appeal. *Cf. Benton v. King*, 199 Ky. 307, 250 S.W. 1002, 1003 (1923) ("The office of a judgment nunc pro tunc is to record some act of the court done at a former time which was not carried into the record, and the power of the court to make such entries is restricted to placing to record evidence of judicial action which has been actually taken. It may be used to make the record speak the truth, but not to make it speak what it did not speak but ought to have spoken. Hence a court in entering a judgment nunc pro tunc has no power to construe what the judgment means, but only to enter of record such judgment as had been formerly rendered, but which had not been entered of record as rendered.").

Although the Court of Appeals agreed with the trial court that the arrearages should only bear postjudgment interest, it found that the child support provisions of the Agreement were unconscionable. We disagree. We uphold the trial court's finding that the Agreement is conscionable, but we also hold that the award of interest was not within the trial court's discretion. Accordingly, we reverse the Court of Appeals.

## III. ANALYSIS

### A. Separation Agreement

■ In 1991, when the trial court first entered the decree dissolving the parties' marriage, William Pursley did not contest the conscionability of the Agreement and the trial court made a perfunctory finding that the Agreement was "not unconscionable." But the trial court set aside this finding when it later voided the 1991 decree. When William Pursley contested the conscionability of the Agreement, the trial court, after considering depositions and other evidence, including the testimony of the lawyer who prepared the Agreement, made extensive findings of fact and concluded that the Agreement was "not unconscionable." The trial court's findings show that it was familiar with the parties' economic circumstances, and in support of its conclusion, the trial court noted (1) that William Pursley is "an educated and sophisticated businessman who had the strong desire to meet his moral and legal obligations to his wife and children"; (2)

that the lawyer assisting the Pursleys "explained to [William Pursley] that ... child support ... [was] beyond what would be required by law"; (3) that the Agreement was the result of negotiations that "spanned some three weeks during which [William Pursley] insisted on deletion of some proposed provisions"; (4) that his decision was not the result of fraud, coercion, or overreaching; and (5) that the terms of the Agreement are not "manifestly unfair and unreasonable." The trial court ruled that William Pursley had the burden "to show that [the Agreement] was unconscionable," and "[a]bsent such proof the [A]greement must be upheld." The trial court found that William Pursley's proof was insufficient to support a finding that the Agreement was manifestly unreasonable and unfair and, therefore, unconscionable.

Relying on *Downing v. Downing*,[5] the Court of Appeals held that "any decision to set child support above the guidelines must be based primarily on the child's needs, as set out in specific supporting findings" by the trial court. It then "[found] that the amount and duration of child support under the agreement so greatly exceed[ed] the children's reasonable needs[6] as to render the terms unconscionable[,]" and remanded the case "to the trial court with instructions to set child support anew based upon [Kentucky Child Support Guidelines]."[7] We disagree both with the Court of Appeals's holding and with its finding of unconscionability.

---

5. Ky.App., 45 S.W.3d 449 (2001).

6. Actually, the children's reasonable needs were not shown by William Pursley, and the Court of Appeals either equated the children's reasonable needs with the highest presumptive child support shown under the Guidelines for two children, or it merely concluded that such high child support exceeded the children's reasonable needs.

7. We would note that with the exception of one year, 1995, William Pursley's annual gross income, alone, for the years now in question, 1992–98, greatly exceeded the Guidelines. Accordingly, the Guidelines do not apply for those years, KRS 403.211(3)(e),(g), and the court would use its discretion in determining child support. KRS 403.212(5).

The Agreement's child support provisions are not unconscionable just because the child support exceeds either the Guidelines or the children's reasonable needs. The Guidelines, themselves, allow parents to agree to child support in excess of the Guidelines.[8] Additionally, we hold that a parent has a right to do more for his or her children than the law requires.[9] And, even though a trial court is not independently empowered to award child support in excess of the Guidelines or a child's reasonable needs, it may do so when the parent knowingly agrees thereto.[10] Here, William Pursley knew that his child support obligation under the Agreement was in excess of his legal obligation; thus, he knowingly agreed to child support beyond his children's needs and the Guidelines.

Like the Court of Appeals, William Pursley relies on *Downing v. Downing*[11] in support of his argument that the child support amount is beyond the children's needs and thus unreasonable. But he overlooks an important difference between the present case and *Downing*. Here, the parties set the amount of child support by agreement, and the trial court approved the Pursleys' Agreement only after finding that William Pursley knew the child support exceeded his legal obligation. In *Downing*, the court independently set child support. Essentially, *Downing* imposes limitations *on the trial court* when setting child support in cases where the parties' gross income exceeds the child support guidelines and the parties have not agreed to child support. *Downing* does not similarly restrict the parties when agreeing to child support. There is no public policy in this jurisdiction which prevents parents from being as generous to their children as they wish,[12] and when parents are determining child support, as opposed to the court, parents may agree to child support obligations that exceed their legal obligations. In recognition of this aspect of settlement agreements, "[a] majority of jurisdictions allow the court to incorporate and enforce, as terms of the decree, agreement terms that the court would have no independent power to order."[13]

8. KRS 403.211(3)(f) ("The parents of the child, having demonstrated knowledge of the amount of child support established by the Kentucky child support guidelines, have agreed to child support different from the guideline amount."); *see Klein v. Klein*, 500 N.W.2d 236, 241–42 (S.D.1993) ("The trial court has authority to deviate from the guidelines in situations involving agreements between the parties.").

9. *In re LaBelle's Trust*, 302 Minn. 98, 223 N.W.2d 400, 409 (1974) ("The petitioner had a right to do more for his children than the law required of him, whether or not the agreement was part of a negotiated over-all property settlement agreement occasion[ed] by and incident to the divorce. It is not for us to frustrate a father's well-intentioned generosity for his children.").

10. *Id.*

11. Ky.App., 45 S.W.3d 449 (2001).

12. UNIF. MARRIAGE & DIVORCE ACT § 309, 9A U.L.A. 585 n. 12 (1998)(citing *Guzman v. Guzman*, 175 Ariz. 183, 854 P.2d 1169 (1993)) ("[P]arties to dissolution proceeding may enter into binding contractual agreement for support payments that are not required by law."); *see also Anderson v. Anderson*, 251 Ga. 508, 307 S.E.2d 483 (1983); *Hay v. Hay*, 730 N.E.2d 787 (Ind.Ct.App.2000); *Ross v. Voiers*, 127 N.C.App. 415, 490 S.E.2d 244 (1997); *Stanaland v. Jamison*, 275 S.C. 50, 268 S.E.2d 578 (1980); *Matter of Marriage of Olsen*, 24 Wash.App. 292, 600 P.2d 690 (1979).

13. PRINCIPLES OF THE LAW OF FAMILY DISSOLUTION: ANALYSIS AND RECOMMENDATIONS § 7.10 cmt. b (Am. Law Inst. 2000); *see* Kathleen Conrey Horan, *Postminority Support for College Education—A Legally Enforceable Obligation In Divorce Proceedings*, 20 FAM. L.Q. 589 n. 17 (1987) (citing 27B C.J.S. Divorce § 319 (1985)) (" 'A husband may by agreement incorporated in the divorce decree ... become obligated to pro-

With respect to the child support guidelines,[14] "[c]ourts will generally grant a deviation [from child support guidelines in a situation where the parties agree to an amount in excess because] the parties may contract to provide support in excess of their legal obligations."[15] One of the primary goals in enacting child support guidelines was to "increase the adequacy of child support awards."[16] Unquestionably, Kentucky took a giant step towards this goal when it enacted the Guidelines.[17] And the purpose of the Guidelines is not offended, but rather is aided by allowing divorcing parents to agree to provide greater support for their children. The Guidelines do not constitute the maximum support that a parent may agree to provide for his or her children. Although, as

a rule, it is not in the best interest of the children when their parents agree to an amount of child support below the Guidelines, no one can convincingly argue that the best interests of the children are not served when their parents agree to support in excess of the amount established by the Guidelines. Although a court is not bound by such agreements,[18] when parents wish to provide or agree to provide more support than required by law, the Guidelines should not act as a barrier. Furthermore, when the trial court reviews the parties' agreement that requires child support *in excess of the Guidelines*, it is only required to find that the parents, "having demonstrated knowledge of the amount of child support established by the [Guide-

vide a college education for his child even though the performance required by the decree may extend beyond the minority of the child." '); Brett R. Turner, *Construction and Enforcement of College Tuition Provisions in Separation Agreements*, 11 No. 2 DIVORCE LITIGATION 21, *2 (1999) (States which follow the majority rule that divorce courts have no power to order parents to pay college tuition, "will enforce private agreements in which a parent agrees to pay college support."); *Solomon v. Findley*, 167 Ariz. 409, 808 P.2d 294, 297 n. 2 (1991) ("[A] growing majority of the states will enforce an agreement ... even if ... [it] provides for support beyond minority ... and even though their statutes recognize that a parent is not responsible for support of adult children and ... [a] court cannot order [such support] ....").

**14.** KRS 403.212.

**15.** LAURA W. MORGAN, CHILD SUPPORT GUIDELINES: INTERPRETATION AND APPLICATION § 4.09(c) (Aspen Law & Business ed., 2001) (citing *Amodio v. Amodio*, 56 Conn. App. 459, 743 A.2d 1135 (2000) (where court need not make detailed findings regarding deviation when court adopts agreement of parties which provides support in excess of guidelines); *Dowie v. Dowie*, 668 So.2d 290 (Fla.Dist.Ct.App.1996) (where parents may agree to child-support obligation that exceeds duty imposed by law); *Dring v. Dring*, 87

Hawai'i 369, 956 P.2d 1301 (1998) (where written agreement can provide for more than guidelines amount, but not less); *In re Marriage of Handeland*, 564 N.W.2d 445 (Iowa Ct.App.1997) (where in computing wife's child support obligation, court appropriately deviated based on agreement of parties, and fact that wife not receiving alimony); *O'Callaghan v. O'Callaghan*, 515 N.W.2d 821 (N.D.Ct.App.1994) (where stipulation by parents to pay what amounted to support in excess of guidelines should be approved by court); *Moreno v. Moreno*, 24 Va.App. 227, 481 S.E.2d 482 (1997) (where parties agree to amount well in excess of guidelines' amount, court does not have to figure exactly the presumptive award)).

**16.** LAURA W. MORGAN, CHILD SUPPORT GUIDELINES: INTERPRETATION AND APPLICATION § 1.02(e) (Aspen Law & Business ed., 2001).

**17.** *Id.* at § 1.02(f) ("Doug Smith, Child Support Director for the Commonwealth of Kentucky, announced that in the fiscal year ending June 30, 1999, child support collections were up 11% from the previous year, and 300% more than what was paid in 1989.").

**18.** KRS 403.180(2); *Pegram v. Pegram*, Ky., 310 Ky. 86, 219 S.W.2d 772 (1949); *Tilley v. Tilley*, Ky.App., 947 S.W.2d 63 (1997).

lines], have agreed to child support" in excess of the Guidelines.[19]

The Pursleys' Agreement also extends support past the age of majority should the children wish to pursue a college education, including graduate school. We point out that it is not uncommon for parents to agree to provide for their children while they pursue an education,[20] and William Pursley would not be the first parent, or the last, to provide for his children through graduate school.[21] It clearly is not against public policy to provide such an education for your child.

William Pursley was informed that the duration and amount he agreed to pay was beyond what was required by law. Nevertheless, he executed the Agreement, which remained unchallenged for approximately a year thereafter. Though he has had a change of heart, "[a] property settlement agreement should not be disregarded simply because one spouse has second thoughts."[22] The Agreement is an enforceable contract between the parties,[23] and it is not the place of courts to disturb it absent some showing of fraud, undue influence, overreaching or manifest unfairness.[24]

William Pursley argues that the Agreement is unconscionable because it could be interpreted to require child support

---

19. KRS 403.211(3)(f).

20. See, e.g., Stevens v. Stevens, Ky., 798 S.W.2d 136 (1990); Wilhoit v. Wilhoit, Ky., 521 S.W.2d 512 (1975); In re Marriage of Mulry, 314 Ill.App.3d 756, 247 Ill.Dec. 612, 732 N.E.2d 667 (2000); Rohn v. Thuma, 408 N.E.2d 578 (Ind.Ct.App.1980); Kirby v. Kirby, 129 Md.App. 212, 741 A.2d 528 (1999); Wood v. Wood, 266 Neb. 580, 667 N.W.2d 235 (2003); Jack v. Jack, 139 Ohio App.3d 814, 745 N.E.2d 1101 (2000); Bryan v. Leach, 85 S.W.3d 136 (Tenn.Ct.App.2001); Richardson v. Richardson, 598 S.W.2d 791 (Tenn.Ct.App. 1980);; Ferguson v. Ferguson, 578 P.2d 1274, 1275 (Utah 1978) ("Ordinarily, a parent will be more than willing to aid and assist an adult child in securing a college education . . . ."); E. Le Fevre, Annotation, Education as Element in Allowance for Benefit of Child in Decree of Divorce or Separation, 56 A.L.R.2d 1207 (2004); 24A AM. JUR. 2D Divorce & Separation § 1035 (2003); Brett R. Turner, Construction and Enforcement of College Tuition Provisions in Separation Agreements, 11 No. 2 DIVORCE LITIGATION 21, *1 (1999) ("[C]ollege support provisions are appearing in negotiated agreements with unprecedented frequency.").

21. See Brett R. Turner, Construction and Enforcement of College Tuition Provisions in Separation Agreements, 11 No. 2 DIVORCE LITIGATION 21 (1999) (Graduate school expenses are payable when expressly provided for in the property settlement agreement).

22. UNIF. MARRIAGE & DIVORCE ACT § 306, 9A U.L.A. 268 n. 43 (1998) (citing In re Marriage of Black, 133 Ill.App.3d 59, 87 Ill. Dec. 831, 477 N.E.2d 1359 (1985); In re Marriage of Kloster, 127 Ill.App.3d 583, 82 Ill.Dec. 847, 469 N.E.2d 381 (1984); Horwich v. Horwich, 68 Ill.App.3d 518, 25 Ill.Dec. 349, 386 N.E.2d 620 (1979)) ("Fact that wife changed her mind after entering into settlement agreement did not render the settlement agreement invalid.").

23. KRS 403.180(5); Peterson v. Peterson, Ky. App., 583 S.W.2d 707 (1979); Wilhoit v. Wilhoit, Ky., 521 S.W.2d 512 (1975); 15 LOUISE E. GRAHAM & HON. JAMES E. KELLER, KENTUCKY PRACTICE § 9.7 (2d ed. 1997) ("KRS 403.180(5) states that the terms of the agreement set forth in the decree of separation are enforceable both as a contract and as a judgment . . . ."); cf. Edwardson v. Edwardson, Ky., 798 S.W.2d 941, 945 (1990) ("[O]ur statutes encourage parties involved in domestic litigation to enter into separation agreements."); see also Robinson v. Robinson, 953 P.2d 880 (Alaska 1998); Morrison v. Morrison, 14 Kan.App.2d 56, 781 P.2d 745 (1989); McLendon v. McLendon, 847 S.W.2d 601 (Tex. App.-Dallas 1992); Rodriguez v. Rodriguez, 1 Va.App. 87, 334 S.E.2d 595 (1985).

24. Rupley v. Rupley, Ky.App., 776 S.W.2d 849 (1989); McGowan v. McGowan, Ky.App., 663 S.W.2d 219 (1983); Peterson v. Peterson, Ky. App., 583 S.W.2d 707 (1979).

throughout his lifetime as his children may wish to remain in school.[25] Aside from the fact that he cannot be called on for compliance with this provision of the Agreement at this time,[26] and thus the provision presents no issue to this Court,[27] the fact that some aspects of the Agreement may be subject to interpretation at a later date does not make it unconscionable because the parties are free to mutually modify the child support provisions or seek a court-ordered modification.[28] It is not uncommon for parties to seek modification of child support provisions in separation agreements as changes occur-the right to do so is expressly provided by statute.[29] The Agreement is currently workable[30] and as any issues arise, the parties should be able to resolve them either on their own or with the assistance of the trial court.[31] Until such time, it presents no issue to this Court.

"[A] bad bargain and unconscionability [are] ... not synonymous."[32] Although we recognize that William Pursley provided Sharen Pursley generous child support, we must give great deference to the trial court because in " 'cases of this nature the trial court is in the best position to evaluate the circumstances surrounding the agreement.' "[33] "Parties to a divorce action often have perfectly valid motives for agreeing to what appear to be bad bargains."[34] Here, ostensibly, William Pursley wanted to provide generous support for his children and to ensure their future education. And, perhaps, he had cathartic reasons for agreeing to such generous child support. "If so, what appears on the surface to be a bad bargain may not be so bad after all. In such a case, it is not manifestly unfair or inequitable to let a party lie in the bed he or she has freely made."[35] Although for William Pursley the Agreement appears to be a bad bar-

**25.** Brett R. Turner, *Construction and Enforcement of College Tuition Provisions in Separation Agreements*, 11 No. 2 DIVORCE LITIGATION 21 (1999) ("In the real world, most institutions insist that an undergraduate education be completed at a reasonable pace ....").

**26.** One of the parties' children has turned eighteen and does not appear to have enrolled in college; the other child is now fifteen and has not graduated from high school.

**27.** *See Richardson v. Richardson*, 598 S.W.2d 791 (Tenn.Ct.App.1980):

The children are at this time minors, 16 and 17 years of age, respectively, and still in secondary schools. The plaintiff cannot be called on for compliance with the terms of this provision unless and until one or more of the children qualify for and enter upon a college education, and until such time, and some demand therefor made upon the plaintiff, there is no justiciable issue before the Court for determination. The Court will not render advisory opinions or consider matters which may or may not occur in the future.

*Id.* at 795.

**28.** KRS 403.250(1); *Brown v. Brown*, Ky., 796 S.W.2d 5 (1990); *see also* James T. Tucker, Annotation, *Family Court Jurisdiction to Hear Contract Claims* 46 A.L.R. 5th 735 (2004).

**29.** KRS 403.213.

**30.** *In re Marriage of Stadheim*, 170 Ill.App.3d 19, 120 Ill.Dec. 373, 523 N.E.2d 1284 (1988) (Trial court's finding that family support provisions of marital settlement was "unworkable" was insufficient to vacate provision of settlement agreement incorporated into dissolution decree in absence of unconscionability.).

**31.** *Brown*, 796 S.W.2d 5.

**32.** *Shraberg v. Shraberg*, Ky., 939 S.W.2d 330, 333 (1997).

**33.** *Id.* (citing *Peterson v. Peterson*, Ky.App., 583 S.W.2d 707 (1979)).

**34.** *Id.* at 334 (Cooper, J., concurring).

**35.** *Id.*

gain on its face, we would note that he still retains the majority of his income.

The trial court found that the Agreement's child support provisions were not "manifestly unfair and unreasonable" and accordingly "not unconscionable." We hold that the trial court's findings were not clearly erroneous, and therefore, the Pursleys' Agreement is enforceable.

### B. Net Income

■ The trial court held that William Pursley's income for the purpose of determining his child support obligation was "[his] gross income as defined for Federal Income Tax purposes less Federal Tax, State Tax, FICA Tax, Medicare Tax, and any other payments required to be paid by [William Pursley] to the state or federal governments." The Court of Appeals agreed with the trial court's ruling. But Sharen Pursley argues that it is William Pursley's income minus only deductions from his 401K that will be used for the children's education. We disagree.

The Agreement provided that William Pursley's federal income tax returns would be used to determine his income, and then after stating his salary and bonus, it provided that "the children shall be entitled to receive 30% of the *net* proceeds from the said salary and bonus." So logically, William Pursley's income for the purpose of calculating his child support obligation is

his salary and bonus as shown on his federal income tax return less deductions therefrom, or in other words, his "net income."[36] The trial court ruled that William Pursley is entitled to deduct any required tax payments in calculating his net income, but not any voluntary payments, such as 401K contributions. We find that this is a reasonable interpretation of the parties' Agreement.

### C. Prejudgment Interest

■ In awarding Sharen Pursley a judgment for the maintenance and child support arrearages, the trial court determined that the arrearages were subject only to postjudgment interest and declined to award prejudgment interest. It reasoned that arrearages were unliquidated until the judgment for the arrearages was entered. The Court of Appeals agreed with the trial court's ruling, but we disagree and hold that Sharen Pursley was entitled to interest at the legal rate of eight percent (8%) per annum[37] from the date that each payment was due and remained unpaid. Accordingly, we reverse the Court of Appeals.

■ Past due payments for child support and maintenance become vested when due.[38] Each payment is a fixed and liquidated debt which a court has no power to modify[39]; therefore, Sharen Pursley was

36. BLACK'S LAW DICTIONARY (8th ed.1999) (*"net income.* Total income from all sources minus deductions, exemptions, and other tax reductions.").

37. KRS 360.010.

38. *Dalton v. Dalton,* Ky., 367 S.W.2d 840, 843 (1963); *Heisley v. Heisley,* Ky.App., 676 S.W.2d 477 (1984); *Whitby v. Whitby,* 306 Ky. 355, 208 S.W.2d 68, 69 (1948) ("We perceive that no distinction can be made between a judgment based upon a claim for alimony or maintenance and a judgment based upon any other legal right. After the judgment is en-

tered, although it may be subject to modification at a subsequent date, it is binding and final until modified; and any payments which may have become due previous to such modification constitute a fixed and liquidated debt in favor of the judgment creditor against the judgment debtor."); *Stewart v. Raikes,* Ky., 627 S.W.2d 586, 589 (1982) ("[E]ach installment of child support becomes a lump sum judgment, unchangeable by the trial court when it becomes due and is unpaid.").

39. *Stewart,* 627 S.W.2d at 589.

entitled to prejudgment interest as a matter of law from the date that each payment was due.[40]

## IV.  CONCLUSION

We reverse the Court of Appeals's holding that the child support provisions of the Pursleys' Agreement were unconscionable and not enforceable, and accordingly, we reinstate the trial court's approval of the Agreement.  We affirm the Court of Appeals's ruling concerning the calculation of child support and maintenance under the Agreement; however, we reverse its ruling that Sharen Pursley was not entitled to prejudgment interest on unpaid child support and maintenance payments.

All concur.

---

**40.**  *Nucor Corp. v. General Elec. Co.*, Ky., 812 S.W.2d 136, 141 (1991) ("When the damages are 'liquidated,' prejudgment interest follows as a matter of course."); *Middleton v. Middleton*, 287 Ky. 1, 152 S.W.2d 266, 268 (1941) ("We are of the further opinion that it was not error to allow interest on Mrs. Middleton's claim.  It was definite and certain both as to time and amount.  The rule is that interest runs as a matter of right on a liquidated demand . . . .").