**Jesse J. CASKEY, Jr., Appellant,**

v.

**Jessica L. CASKEY, Appellee.**

**No. 2010–CA–000667–ME.**

Court of Appeals of Kentucky.

Nov. 24, 2010.

Jesse J. Caskey, Jr., Pro Se, Morehead, KY, for appellant.

No Brief for Appellee.

Before LAMBERT, MOORE, and NICKELL, Judges.

## *OPINION*

MOORE, Judge:

Jesse Caskey, Jr. (the father) appeals the Wolfe Circuit Court's order denying his motion which in substance sought to make him the primary residential parent

of his daughter (Z.C.) and a subsequent order denying his motion to reconsider. After careful review, we reverse.

■ As an initial matter (and, as is often the case), the terminology of custody and primary residential custodian or parent is confused and used interchangeably in the father's brief before this Court and proceedings before the trial court. The father does not seek to set aside the joint custody agreement, and he does not seek sole custody. Rather, from the substance of his argument before the trial court and this Court, it is patently clear that it is the designation of the primary residential parent that he seeks to change from the mother to himself. *See Pennington v. Marcum,* 266 S.W.3d 759 (Ky.2008). Accordingly, under *Pennington,* we will review this as a motion to modify the parties' visitation/time-sharing arrangements and the best interest standard of Kentucky Revised Statute (KRS) 403.320 will apply.

We also pause to note that the mother did not file a brief before this Court. Pursuant to Civil Rule (CR) 76.12(8)(c)(i), we may take the factual statements of the father as true. Nonetheless, having reviewed the entirety of the hearing and the exhibits admitted therein, the father's factual statements are supported by the record.

■ Turning to the facts of this matter, the marriage of the father and Jessica Caskey (the mother) was dissolved in Wolfe Circuit Court by order and decree entered on May 24, 2007. The parties had one child, Z.C., who was born on June 24, 2002. The divorce decree incorporated the parties' December 5, 2006 settlement agreement by reference wherein the parties agreed that: (1) they would share joint custody of their minor daughter; (2) the mother would be the child's primary caregiver; (3) the parties would have equal timesharing; and (4) they would share the financial responsibility of the child.

On August 18, 2009, the father filed a motion for a hearing on the "issue of custody modification." Rather, as explained *supra* and as shown in the proceedings below, the father was seeking to be named the primary residential parent and asked that the court award Z.C.'s mother standard visitation, which would be visitation every other weekend and one time during the week.

As the testimony at the hearing on his motion revealed and as stated in his affidavit attached to his motion, the primary event leading to the father's motion was that Z.C. had been recently assaulted while in the mother's presence. This incident is pivotal to the Court's decision in this matter.

The undisputed facts include that on Thursday, May 21, 2009, the mother was riding in an automobile driven by her best friend, and Z.C. was in the backseat. They stopped to pick up Thomas Pressnell, which the record indicates was the mother's best friend's husband. Pressnell got into the backseat with Z.C., who was six years old at the time. Sometime during the ride, Pressnell assaulted Z.C. by striking her in the throat and choking her. The mother's testimony was that she did not know what happened until the next day.

According to the medical records admitted at the hearing, Z.C. was seen at Kentucky River Medical Center at 23:50, nearly midnight, on Friday, May 22, 2009. The medical record provides that "mother alleges girlfriend's husband choked and struck patient" and that "mother states that [patient] was riding in vehicle with mother[']s best friend and her husband when the friend['s] husband chocked [sic] the patient *yesterday.*" (Emphasis added).

The father was scheduled to pick up Z.C. on Friday. But the mother called to inform him that something had taken place and he could not get Z.C. until Saturday. When the father picked up Z.C. on Saturday, he alleges she had bruising on her chest and throat and hemorrhaging around her eyelids and mouth. Pursuant to C.R. 76.12(8)(c)(i), we may take this as true. The father's testimony at the hearing was in accord.

Pursuant to the criminal records admitted at the hearing, Pressnell was indicted in the Wolfe Circuit Court for violation of KRS 508.100 and KRS 509.020. The indictment charged that on the 21st day of May in 2009, Pressnell

COUNT I: COMMITTED THE OFFENSE OF CRIMINAL ABUSE IN THE FIRST DEGREE WHEN HE INTENTIONALLY ABUSED Z.C., A MINOR CHILD WHO WAS LESS THAN 12 YEARS OLD, AND THEREBY PLACED HER IN A SITUATION THAT MAY HAVE CAUSED HER SERIOUS PHYSICAL INJURY BY HITTING HER AND CHOKING HER

COUNT II: COMMITTED THE OFFENSE OF UNLAWFUL IMPRISONMENT IN THE FIRST DEGREE WHEN HE KNOWINGLY AND UNLAWFULLY RESTRAINED Z.C. UNDER CIRCUMSTANCES WHICH EXPOSED HER TO A RISK OF SERIOUS PHYSICAL INJURY

Pressnell's bail was set at $95,000 full cash. On November 20, 2009, he entered a motion to enter a plea on the Commonwealth's offer on a guilty plea. The Commonwealth offered to amend the charges to assault in the fourth degree. In regard to the facts of the case on the offer, which Pressnell signed, it stated:

The defendant intentionally caused physical injury to Z.C. a minor child and knowingly and unlawfully restrained said child under circumstances which exposed her to a risk of serious physical [injury].

The mother was also indicted[1] and charged that on the 21st of May of 2009, she

COMMITTED THE OFFENSE OF FAILURE TO REPORT DEPENDENCY, NEGLECT, OR ABUSE WHEN [SHE] KNOWING OR HAVING REASONABLE CAUSE TO BELIEVE THAT Z.C., A MINOR CHILD WHO WAS LESS THAN 12 YEARS OLD, HAD BEEN ABUSED BY THOMAS PRESSNELL, FAILED TO IMMEDIATELY REPORT THE ABUSE TO LOCAL LAW ENFORCEMENT, THE KENTUCKY STATE POLICE, THE CABINET FOR FAMILIES AND CHILDREN, THE COMMONWEALTH ATTORNEY, OR THE COUNTY ATTORNEY.

The mother remained under indictment at the time the hearing on the father's motion was held. She therefore refused to testify to the specifics of what happened, but did admit that she was not aware of what had transpired between Pressnell and Z.C. until the day after the attack.

In sum from the record evidence, it is undisputed that Pressnell attacked Z.C., and Pressnell admitted in the Commonwealth's offer of a plea agreement that the attack was such that it caused Z.C. physical injury and exposed her to a risk of serious physical injury. It is also undisputed that this attack on Z.C. took place while the mother was present in the car. And, despite the appearance of bruising on Z.C. and the other physical manifestations of the attack that the father testified to still be present when he picked up Z.C.

1. Jacob Tolson was indicted along with the mother. He did not testify at the hearing.

two days after the attack, the mother testified she did not know what happened until the day after the attack. The medical records verify that the mother failed to take Z.C. for medical treatment until nearly midnight of the day following the attack. Regarding this incident, the trial court noted in its order that Z.C. "may not have been exemplarily monitored" but concluded that Z.C. was not in danger while in the mother's care.

While the father also alleges other concerns, supported by the record, regarding Z.C.'s lack of dental care and other health issues, Z.C.'s recurring lice, and frequent moves made by the mother and school changes for Z.C., along with problems of tardiness and school attendance, we need not delve into those areas. The attack on Z.C. and the mother's response—or lack thereof—requires reversal in this case, notwithstanding other pressing issues. The mother cannot dispute that while Z.C. was in her care and presence, Z.C. was attacked, the mother failed to protect her, the mother was not even aware of the attack until the following day, and despite physical manifestations of the attack on Z.C., the mother failed to report the attack to authorities in a timely manner and failed to take Z.C. for medical care until nearly midnight of the day following the attack. These undisputed facts are more than sufficient to show that it is in Z.C.'s best interest for the father to be designated as the primary residential parent, with whom Z.C. should live. Thus, we reverse.

We take note that our standard of review is high. This Court will only reverse a family court's determinations as to visitation and designation of primary residential parent if they constitute a manifest abuse of discretion, or were clearly erroneous in light of the facts and circumstances of the case. See e.g., Drury v. Drury, 32 S.W.3d 521, 525 (Ky.App.2000) (citing Wilhelm v.

Wilhelm, 504 S.W.2d 699, 700 (Ky.1973)). "A finding of fact is clearly erroneous if it is not supported by substantial evidence, which is evidence sufficient to induce conviction in the mind of a reasonable person." B.C. v. B.T., 182 S.W.3d 213 (Ky. App.2005). While it is rare to overturn a court under this standard, the case at hand presents one of those exceptional cases.

The resolution of the father's motion was to be considered under what was in the best interests of Z.C. See Pennington v. Marcum, 266 S.W.3d 759; KRS 403.320. Relevant to our review are the factual findings by the family court that Z.C. was well adjusted to both parents' homes and had a good relationship with both parents and their families. The family court found that the father was well-suited to care for Z.C. and essentially that both parents were properly suited to be primary residential parent. But according to the family court, there was nothing that justified changing the status of the primary residential parent. The family court wrote that while in her present home environment Z.C. was not "exemplarily monitored," the court concluded that Z.C.'s home environment with her mother did not seriously endanger her. Yet, the family court "request[ed] the Clerk of [that] court to refer this case to the local Commonwealth of Kentucky, Cabinet for Health and Family Services, Department of Community Based Services, for monitoring and investigation."

Referring this case to the Cabinet to monitor and investigate defies the family court's determination that designating the mother as primary residential parent is in the best interest of Z.C. Nothing whatsoever in the record and nothing whatsoever in the court's order references any issues that need to be monitored or investigated on the part of the father. On the other hand in regard to the mother, the child

was attacked while in her presence, and Pressnell admitted that he had caused physical injury to Z.C. and placed her in danger of serious physical injury. Thus, it is apparent the family court perceived that the situation with the mother required monitoring. Given the undisputed circumstances surrounding the attack on Z.C., substantial evidence did not support a finding that it was in Z.C.'s best interest for her mother to continue to be designated as primary residential parent. If Z.C.'s mother did nothing to protect her from an assault while they were riding in a car together or the mother was so otherwise engaged that she was not aware of it and failed to observe the physical results of the abuse until the following day, it is not reasonable to conclude that Z.C. is in an environment that is in her best interests. Thus, we reverse and remand this matter to the Wolfe Circuit Court for proceedings consistent with this opinion.

ALL CONCUR.