RENDERED:  JUNE 30, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0433-MR

DANIEL HEEKIN                                                                              APPELLANT

v.

APPEAL FROM JEFFERSON FAMILY COURT
HONORABLE DERWIN L. WEBB, JUDGE
ACTION NO. 20-CI-501777

NICOLE HEEKIN                                                                              APPELLEE

AND

NO. 2023-CA-0180-MR

NICOLE HEEKIN                                                                         CROSS-APPELLANT

v.

APPEAL FROM JEFFERSON FAMILY COURT
HONORABLE DERWIN L. WEBB, JUDGE
ACTION NO. 20-CI-501777

DANIEL HEEKIN                                                                        CROSS-APPELLEE

OPINION
AFFIRMING IN PART,
REVERSING IN PART,
AND REMANDING
IN APPEAL NO. 2022-CA-0433-MR; AND
REVERSING AND REMANDING
IN APPEAL NO. 2023-CA-0180-MR

\*\* \*\* \*\* \*\* \*\*

BEFORE: COMBS, EASTON, AND ECKERLE, JUDGES.

ECKERLE, JUDGE: The appeal and cross-appeal arise from a judgment and post-judgment orders of the Jefferson Family Court in the dissolution of the marriage of Daniel Heekin (Husband) and Nicole Heekin (Wife). In his direct appeal, Husband argues that the Family Court erred in finding that he had dissipated marital assets and abused its discretion in its award of maintenance and in its orders setting his parenting time. In her cross-appeal, Wife argues that the Family Court abused its discretion by setting aside its earlier award of attorney fees to her prior counsel.

In the direct appeal, we conclude that the Family Court did not clearly err in finding that Husband dissipated marital assets and by charging that dissipation against him in its division of other marital property. We further conclude that the Family Court did not abuse its discretion by awarding Wife permanent, prospective, open-ended maintenance. However, the Family Court failed to make sufficient findings to justify its retroactive award of maintenance to Wife. Furthermore, the Family Court's findings are not sufficient to determine a

-2-

reasonable basis for its decision to reduce Husband's parenting time. Hence, we affirm in part, reverse in part, and remand for additional findings on these issues.

In the cross-appeal, we conclude that the Family Court lacked a reasonable basis to set aside its prior award of attorney fees to Wife's former counsel. However, there was no evidence of record which would allow the Family Court to find that those fees were reasonable, and the Family Court did not so find. Hence, we reverse the Family Court's denial of attorney fees, and we remand this matter for an additional hearing and findings as set forth below.

## I.    Facts and Procedural History

Husband and Wife were married in July 2012 and separated in August 2020. Wife was born and raised in Malta, and the parties resided there for a short time after the marriage. Two children were born during the marriage: J.H. (born 2016) and E.H. (born 2018). J.H. has extraordinary medical needs and developmental delays, and he requires extensive individual care.

Husband works as an accountant/auditor, most recently for KPMG, L.L.C. Wife works part-time as a clinical counselor and therapist. In addition, Wife was the primary caretaker for both children, including J.H.'s special needs. However, there was testimony that Husband has also provided at-home care for J.H. when Wife was absent.

Husband filed a petition for dissolution of the marriage on August 5, 2020. Shortly after the filing of the petition, Wife filed motions for temporary child support and maintenance. The Family Court conducted hearings on the motions in early 2021. Shortly thereafter, the Family Court made findings and entered an award of temporary child support. However, the Family Court did not rule on Wife's motion for temporary maintenance.

In December of 2021, the matter proceeded to a bench trial on the remaining issues of division of marital property; custody, visitation, and support of the parties' children; and Wife's request for permanent maintenance. Thereafter, on January 31, 2022, the Family Court entered findings of fact, conclusions of law, and an order on the disputed issues. Among other things, the Court addressed each party's allegations that the other improperly transferred marital funds during the period of separation. The Family Court found that Wife had transferred $57,229.00 from a joint account, and that Husband had transferred $40,573.00 from an investment account. The Family Court did not characterize the former transfer as a dissipation, but stated that it would "balance equity in other assets to account for the undisputed transfers of marital funds." On the other hand, the Family Court characterized the latter transfer as a dissipation and charged that amount against Husband's equity in the marital residence.

On the issue of maintenance, the Family Court found that Wife was unable to support herself at the level established during the marriage either through marital property apportioned to her or through appropriate employment. The Court noted that Wife's responsibilities as primary caretaker for J.H. left her unable to work full-time. Consequently, the Family Court awarded her open-ended maintenance of $3,000.00 per month. The Court designated that the award would be retroactive to September 20, 2020, which was the date of Wife's motion for temporary maintenance.

The Family Court previously entered an agreed order of joint custody and a parenting schedule for both children. The Court addressed Wife's motion to modify the parenting schedule to eliminate Husband's overnight stay with the children on Wednesday. The Family Court granted the motion, finding that Husband "has demonstrated a lack of knowledge of or an unwillingness to comply with the medical needs of the children, especially J.H." Finally, the Family Court directed Husband to pay $30,000.00 of Wife's attorney fees directly to her prior counsel.

Both parties filed motions to alter, amend, or vacate this order. CR[1] 59.05. On April 1, 2022, the Family Court granted the motions in part and denied

---

[1] Kentucky Rules of Civil Procedure.

them in part.  On the division of marital assets, the Family Court addressed Husband's objections to the Court's finding that he had dissipated marital assets in the investment account.  The Court found that Husband withdrew $40,573.00 from the account and used the funds for his attorney fees, trips, dates, and some of his living expenses.  Because Husband had access to other assets for these expenses, the Family Court found that they were not justified and amounted to a dissipation of marital assets.  Likewise, the Court found that Wife had transferred $57,229.00 from a joint account and used these funds for personal expenses and attorney fees.  The Court again declined to characterize this as a dissipation but found that the amounts spent on attorney fees were not marital in nature.

On the issue of maintenance, the Family Court expanded its findings regarding Wife's ability to work full-time and support herself.  The Court stated that it awarded open-ended maintenance because Wife is unable to work full-time while also serving as primary caretaker for J.H.  The Court also noted that Husband has a considerably greater earning capacity and does not have the obligations of caretaking for the children.

The Family Court reiterated its prior decision to eliminate Husband's Wednesday-night timesharing.  The Court found that regular overnight visits during the school week would be overly disruptive.  The Court also noted the testimony that Husband does not have adequate equipment for J.H.'s home therapy

and that he does not have appropriate knowledge of the child's exercises. The Family Court also stated that Husband "has made no effort to obtain the necessary equipment or receive the training that he needs to adequately work with the children while they are in his care." Thus, the Court denied Husband's request to reinstate Wednesday-night overnight parenting time.

Finally, the Family Court vacated its award of attorney fees to Wife's counsel, "as it appears that [Wife] is contesting the same." This appeal and cross-appeal followed. Additional facts will be set forth below as necessary.

## II. Dissipation of Marital Assets

In his appeal, Husband first argues that the Family Court erred by finding that he had dissipated $40,573.00 from the investment account and charging that amount against his interest in the marital residence. Although he admits to removing those funds from the investment account, he argues that Wife failed to prove his intent to deprive her of marital assets or that the funds were expended for a non-marital purpose. Rather, he contends that he merely used the funds in the same manner that Wife used the $57,229.00 that she took from the parties' joint accounts.

A court may find that a party dissipated marital assets when it is satisfied by a preponderance of the evidence that marital property was expended during a period when the parties were separated or dissolution was impending, and

there is a clear showing of intent to deprive the other spouse of his or her proportionate share of marital property. *Brosick v. Brosick*, 974 S.W.2d 498, 502 (Ky. App. 1998). The concept of dissipation does not categorically prohibit either party from expending marital funds during a period of separation. Obviously, separated spouses often must meet ordinary and sometimes extraordinary expenses without the benefit of dual incomes. Furthermore, since all property acquired during the marriage until the date of the decree is presumed marital pursuant to KRS[2] 403.190(3), most expenditures during a period of separation will involve marital funds.

Rather, the rule in *Brosick* merely places such expenditures under special scrutiny to ensure that one party is not unfairly deprived of marital assets through the other party's unilateral actions. "Once the party alleging dissipation establishes a *prima facie* case, the burden of proof shifts to the party charged with the dissipation to produce evidence sufficient to show that the expenditures were appropriate." *Brosick*, 974 S.W.2d at 502. If a party is proven to have dissipated marital assets, "the court will deem the wrongfully dissipated assets to have been received by the offending party prior to the distribution." *Id.* at 500.

---

[2] Kentucky Revised Statutes.

We review the Family Court's factual findings of dissipation for clear error. CR 52.01; *Reichle v. Reichle*, 719 S.W.2d 442, 444 (Ky. 1986). Findings are not clearly erroneous if they are supported by substantial evidence. *Moore v. Asente*, 110 S.W.3d 336, 354 (Ky. 2003). Substantial evidence means "evidence of substance and relevant consequence having the fitness to induce conviction in the minds of reasonable men." *Owens-Corning Fiberglas Corp. v. Golightly*, 976 S.W.2d 409, 414 (Ky. 1998) (citations omitted). It is within the province of the Family Court as the fact-finder to determine the credibility of the witnesses and the weight given to the evidence. *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008).

In this case, both Husband and Wife admitted that they transferred marital assets during their separation. Both Husband and Wife spent the funds on living expenses and legal fees. In addition, Husband spent some of his funds on travel and other personal expenses. The Family Court concluded that Wife's living expenses were marital in nature because she had no other funds to support herself and the children. However, the Court also found that their respective legal expenses, as well as Husband's living and personal expenses, were not valid marital expenditures. The Court specifically noted that Husband had access to other income and assets for these expenses while Wife did not. Thus, the Family

Court inferred Husband's intent to deprive Wife of these assets by the absence of an appropriate reason for the expenses.

Husband admitted to non-marital expenditures during the period of separation. Those expenditures clearly deprived Wife of marital assets. Consequently, Husband had the burden of proving that the expenditures were appropriate. Husband argues that he provided sufficient accounting to meet this burden. He testified that he paid about $40,000.00 in attorney fees out of the investment account. In addition, he provided receipts for $3,290.00 for dates and travel. Husband states that he used some funds for living and moving expenses, although he does not indicate the amount or source of those expenditures. Husband further testified that, at the time he removed the assets from the investment account, he did not have access to any additional funds to meet these expenses.

It appears from the evidence that Husband spent most of the allegedly dissipated funds on his attorney fees. After considering the expenditures and the resources of both parties at the relevant times, the Family Court determined that Husband failed to prove that the expenses were justified. Although the evidence would have supported a different conclusion, we cannot find that the Family Court clearly erred by characterizing Husband's actions as dissipation.

### III.    Maintenance

Husband next raises several issues relating to the Family Court's award of maintenance to Wife.  KRS 403.200 provides that a court may grant maintenance to either party in a divorce action only if it finds that the party seeking maintenance "[l]acks sufficient property, including marital property apportioned to him, to provide for his reasonable needs; and . . . [i]s unable to support himself through appropriate employment[.]"  KRS 403.200(1).  Under this statute, a trial court must first make relevant findings of fact and then determine maintenance considering those facts.  *Perrine v. Christine*, 833 S.W.2d 825, 826 (Ky. 1992).  "In order to reverse the trial court's decision, a reviewing court must find either that the findings of fact are clearly erroneous or that the trial court has abused its discretion."  *Id.*  Once the trial court finds that maintenance is appropriate, the amount and duration of maintenance is left to the sound discretion of the trial court.  *Gentry v. Gentry*, 798 S.W.2d 928, 937 (Ky. 1990).

Husband does not object to the sufficiency of the Family Court's findings that Wife was entitled to permanent maintenance.  Rather, he raises several issues concerning the amount and duration of the Family Court's award.  First, Husband argues that the Family Court abused its discretion by making its maintenance award retroactive to the date that Wife filed her motion for temporary maintenance.  Although KRS 403.160 permits an award of temporary maintenance,

the purpose of such an award is to preserve the *status quo* between the spouses while the dissolution proceeding is pending. *Horvath v. Horvath*, 250 S.W.3d 316, 318 (Ky. 2008). Consequently, temporary maintenance terminates with the entry of the dissolution decree.

In *Horvath*, the trial court entered an award of temporary maintenance in the amount of $1,700.00 per month. Husband consistently made those payments. However, he was also in the process of selling his interest in a business. Since he anticipated that this interest would be deemed marital, the Husband increased his monthly payments to reflect the payments that he was receiving. However, the trial court characterized all of these payments as a division of marital property rather than maintenance. Consequently, that court concluded that the husband still owed $1,700 per month in maintenance arrears from the date of the order to the date of judgment. *Id.* at 317.

On review, this Court disagreed with that trial court's characterization of the amount owed as an arrearage; but concluded that it did not affect the total amount that the husband owed. *Id.* at 317-18. But on discretionary review, our Supreme Court reversed. The Court held that the husband was entitled to make his temporary maintenance payments from any source, including marital property. *Id.* at 318. The Court concluded that the husband clearly satisfied his temporary maintenance obligation, and therefore, the trial court erred by characterizing the

-12-

amounts owed as an arrearage. *Id.* The Court also observed that the husband was genuinely aggrieved by this error because interest accrues on the arrearage as a matter of law. *Id.*

Unlike in *Horvath*, the Family Court in this case did not enter a temporary maintenance order. The Court simply designated its award of permanent maintenance to be retroactive to the date that Wife filed her motion for temporary maintenance. Consequently, this is not a case where the Family Court impermissibly extended the temporary maintenance award beyond the entry of the decree.

We also agree with Wife that Kentucky law permits the Family Court to grant a retroactive award of maintenance from the filing of the motion to the entry of judgment. *Mudd v. Mudd*, 903 S.W.2d 533, 534 (Ky. App. 1995). However, the maintenance statutes generally contemplate prospective relief. *Pursley v. Pursley*, 144 S.W.3d 820, 828-29 (Ky. 2004). Thus, retroactive relief is usually appropriate only when circumstances delay a case from being submitted for decision. *Mudd*, 903 S.W.2d at 534 (citing *Ullman v. Ullman*, 302 S.W.2d 849, 850 (Ky. 1957)).

And as previously noted, the purpose of temporary maintenance is to preserve the status quo between the spouses while the dissolution proceeding is pending. *Horvath*, 250 S.W.3d at 318. Thus, Wife's motion for temporary

-13-

maintenance involves a distinct inquiry from her request for permanent maintenance in the decree. Finally, maintenance payments become vested when accrued. *Pursley*, 144 S.W.3d at 828. Consequently, pre-judgment interest accrues on past-due payments on the date when they were due, even when the arrearage is retroactively imposed. *Id.* (citing KRS 360.010).

In this case, the Family Court's retroactive award imposed a maintenance arrearage of $48,000.00 on Husband. The Family Court's findings do not indicate that it considered the effect of that arrearage or the statutory interest on its overall division of marital property. In addition, the Family Court did not set out any reasons why a retroactive award of permanent maintenance was appropriate considering the significant delay between Wife's filing of her motion for temporary maintenance and the entry of the final decree. In the absence of such findings, the Family Court abused its discretion by making the retroactive award. Therefore, we must remand this matter for additional findings to address the reasons for making the award retroactive to the date of Wife's motion for temporary maintenance.

Husband also argues that the Family Court abused its discretion by awarding permanent, open-ended maintenance to Wife. But in this matter, the Family Court made extensive findings justifying the award. In its order denying Husband's CR 59.05 motion, the Court found that Wife is unable to work full-time

-14-

due to her obligations as primary caretaker for the children, particularly their disabled child. The Court also found that Husband "has not been involved with the day-to-day care and medical appointments of the children, so he has been able to work full time and excel at his career, earning $218,000.00 for the year 2021." The Court went on to find,

> Even though the parties have only been married for nine (9) years, the situation with their children is extraordinary. It is not a matter of simply allowing [Wife] enough time to be able to be in a position to provide for herself, but rather the Court must also consider her capacity to work while also caring for their disabled children. Certainly, if circumstances change and/or this becomes no longer the case, the award would be modifiable. As such, the Court believes that an open-ended award of maintenance is appropriate.

Although Husband disagrees with these findings, he has not shown that they are clearly erroneous or fail to consider the applicable factors of KRS 403.200(2). The Family Court also properly noted that its award of maintenance is modifiable upon a showing of a substantial change in circumstances. As a result, we cannot find that the Family Court's award of prospective, permanent, open-ended maintenance constituted an abuse of its discretion. Therefore, we affirm this portion of the maintenance award.

## IV.    Parenting Time

In his final argument on appeal, Husband argues that the Family Court abused its discretion by eliminating his overnight parenting time with the children

-15-

on Wednesday nights. He contends that this reduction granted him less than "reasonable" parenting time, as required by KRS 403.320(1).

KRS 403.320(1) provides that "[a] parent not granted custody of the child . . . is entitled to reasonable visitation rights unless the court finds, after a hearing, that visitation would endanger seriously the child's physical, mental, moral, or emotional health." Reasonable visitation is "decided based upon the circumstances of each parent and the children, rather than any set formula." *Drury v. Drury*, 32 S.W.3d 521, 524 (Ky. App. 2000). In determining the best interests of the children, a trial court is in the best position to resolve the conflicting evidence. *Frances*, 266 S.W.3d at 758-59. Thus, matters involving visitation are peculiarly within the discretion of the trial court. *Drury*, 32 S.W.3d at 526.

However, this discretion is circumscribed by the provisions of KRS 403.270(2), which provides, in pertinent part, as follows:

> The court shall determine custody in accordance with the best interests of the child and equal consideration shall be given to each parent and to any *de facto* custodian. Subject to KRS 403.315, there shall be a presumption, rebuttable by a preponderance of evidence, that joint custody and equally shared parenting time is in the best interest of the child. If a deviation from equal parenting time is warranted, the court shall construct a parenting time schedule which maximizes the time each parent or *de facto* custodian has with the child and is consistent with ensuring the child's welfare.

-16-

The statute goes on to provide a list of factors for the court to consider in determining the best interest of the child. If the court determines that a deviation from equal parenting time is appropriate, it must set forth a parenting time schedule maximizing the time each parent has with the child and "consistent with ensuring the child's welfare." KRS 403.270(2).

A reduction in a parent's visitation schedule is considered a restriction of that visitation only if the new schedule is not reasonable. *See Kulas v. Kulas*, 898 S.W.2d 529, 530 (Ky. App. 1995). Wife never sought to restrict Husband's visitation, only to modify it based upon the needs of the children. Under KRS 403.320, a trial court has the flexibility to modify visitation under such circumstances when it is shown to be in the best interests of the children. *Pennington v. Marcum*, 266 S.W.3d 759, 769-70 (Ky. 2008).

In this case, the Family Court granted Husband parenting-time every Wednesday from 5:00 p.m. to 8:00 p.m., every other Thursday from 5:30 p.m. until 8:30 p.m., and every other weekend from Friday at 5:00 p.m. until Sunday at 10:00 p.m. The Court also granted him extensive holiday and summer-vacation parenting time. Although the Court eliminated overnight visitation on Wednesdays, Husband has not shown that this single modification renders the schedule as less than reasonable.

Husband also argues that the Family Court clearly erred in finding that overnight weekday visitation would be overly disruptive to the children and that he was unable or unwilling to provide the care and equipment that the children need for such visitation. He cites to testimony from the children's therapists, and notes that none of them testified that he lacked the knowledge or equipment necessary to meet the children's needs. In reaching a contrary conclusion, the Family Court primarily relied on Wife's testimony regarding her observations of the children when they returned from visits with Husband.

In both its initial order and its order denying Husband's CR 59.05 motion, the Family Court found that Husband "is unable to meet the children's needs on a regular basis pursuant to *Caskey v. Caskey*, 328 S.W.3d 220 (Ky. App. 2010)." However, this conclusion is at odds with the Family Court's grant of alternate weekend, holiday, and summer parenting time. Clearly, he is able to meet the children's needs at those times.

Moreover, *Caskey* involved a situation where the child was assaulted while in the mother's care, and the mother was indicted for allowing the child to be abused. *Id.* at 222. There was also extensive evidence of the mother's neglect of the needs of the child. *Id.* at 222-23. This Court reversed the trial court's denial of the motion to modify custody and visitation, concluding that it amounted to a manifest abuse of discretion under the circumstances. *Id.* at 223-24.

-18-

The circumstances of the current case present a far less dire situation than those in *Caskey*. It only concerns a single overnight, mid-week visitation. There are no allegations that the children have been harmed while in Husband's care. Wife concedes that Husband is a suitable person for custody and care of both children at other times. Indeed, the Court had no objections to Husband having overnight, weekend parenting time, even though the same concerns would appear to apply. At the very least, the Family Court's findings that Husband is unable "to meet the children's needs on a regular basis" is overstated.

This leaves us with the Family Court's conclusion that Husband's lack of knowledge and equipment would make Wednesday-night parenting time "overly disruptive" to the children. We would normally defer to the Family Court's wide discretion in scheduling matters. But in this case, the Family Court's findings are not sufficient to determine whether it adequately considered the appropriate factors when it eliminated Husband's Wednesday-night parenting time. Moreover, as discussed above, KRS 403.270(2) requires more specific findings when deviating from equal parenting time. Consequently, we must reverse this single holding and remand for additional factual findings setting out whether mid-week overnight parenting time with Husband would be in the best interests of the children.

## V. Cross-Appeal – Attorney Fees

In her cross-appeal, Wife argues that the Family Court abused its discretion by setting aside its prior award of $30,000.00 in attorney fees. As an initial matter, we note that the Family Court previously awarded attorney fees directly to Wife's former counsel, Louis Waterman (Waterman). However, Waterman is not a party to this appeal. Under the rule set forth in *Neidlinger v. Neidlinger*, 52 S.W.3d 513, 519 (Ky. 2001), *overruled on other grounds by Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018), the attorney would be an indispensable party to Wife's appeal from the Family Court's order setting aside the award of attorney fees to him.

But recently, the Kentucky Supreme Court noted that this rule has been altered by the adoption of the Kentucky Rules of Appellate Procedure (RAP). *Mahl v. Mahl*, ___ S.W.3d ___, 2023 WL 3113308 (Ky. Apr. 27, 2023) (finality endorsement granted May 18, 2023). Based on RAP 2(A)(2) and 10(B), strict compliance for naming an indispensable party is no longer required. *Mahl*, 2023 WL 3113308, at *8. Although it is not clear how these new rules affect the relief available on appeal, we conclude that Wife is entitled to challenge the denial of her attorney fees even though Waterman is not a party to this appeal.

KRS 403.220 authorizes a trial court to order a party to pay a "reasonable amount" of the other party's attorney fees after considering the

-20-

financial resources of the parties.  In *Smith v. McGill*, 556 S.W.3d 552 (Ky. 2018), the Kentucky Supreme Court overruled prior case law requiring that there be a disparity in the financial resources of the parties in favor of the payor.  *Id.* at 556. "While financial disparity is no longer a threshold requirement which must be met in order for a trial court to award attorney's fees, we note that the financial disparity is still a viable factor for trial courts to consider in following the statute and looking at the parties' total financial picture."  *Id.*  Other factors the trial court should consider include the following:

> (a) Amount and character of services rendered.  (b) Labor, time, and trouble involved.  (c) Nature and importance of the litigation or business in which the services were rendered.  (d) Responsibility imposed.  (e) The amount of money or the value of property affected by the controversy, or involved in the employment.  (f) Skill and experience called for in the performance of the services.  (g) The professional character and standing of the attorneys.  (h) The results secured.

*Rumpel v. Rumpel*, 438 S.W.3d 354, 363 (Ky. 2014) (quoting *Sexton v. Sexton*, 125 S.W.3d 258, 272-73 (Ky. 2004)).

Following the bench trial, Wife's current counsel, Louis P. Winner (Winner), filed an affidavit setting that she had incurred $74,429.67 in attorney fees through representation by his firm, and $101,622.92 in attorney fees through representation by Waterman's firm.  Based on this affidavit, Wife's combined attorney fees are $176,052.59.  The affidavit also stated that Wife still had an

outstanding balance of $44,583.00 owed to Waterman. On the other hand, Wife's tendered factual findings set out attorney fees of $71,025.17 to Winner's law firm and $57,039.00 to Waterman's firm, which should result in attorney fees totaling $128,064.17.

In its initial findings, the Family Court found that Husband had incurred attorney fees and costs totaling $73,923.25, while Wife had incurred attorney fees and costs totaling $172,647.00.[3] The Court also found that Wife had outstanding attorney fees owed to Waterman in the amount of $44,583.00. The Family Court considered Husband's substantially greater wealth and resources. But the Court also pointed out that Wife had incurred more than twice the attorney fees and costs than Husband. Based upon these significant disparities, the Family Court directed Husband to pay $30,000.00 of Wife's fees to her attorney.

In his petition for rehearing, Husband noted that neither Winner nor Waterman provided detailed billing records. Consequently, Husband argued that Winner's affidavit lacked sufficient detail to determine whether Wife's fees were reasonable. He also argued that the Family Court failed to make sufficient findings under the factors set out in *Sexton*. Husband also pointed out that Wife had used

---

[3] This total is not consistent with the amounts set forth either in Winner's affidavit or in the tendered findings, and the Family Court did not state how it arrived at this figure. While neither party has challenged the factual finding, this disparity is moot in light of our conclusion below that this matter requires additional factual findings.

marital funds to pay her attorney fees while the matter was pending. In addition, he asserted that Wife's prosecution of the dissolution matter often had been vindictive. Finally, Husband asserted that Wife testified that she was contesting the majority of her fees to Waterman, and "she did not expect to pay them." However, Husband's motion did not include a citation to the record for this assertion. As noted above, the Family Court relied on this latter ground in setting aside its award of $30,000.00.

Wife argues that there was no evidence in the record to support this assertion that she was contesting the attorney fees owed to prior counsel. We agree. Neither the parties nor the Family Court cite to any evidence or testimony supporting this claim. Likewise, there is no evidence that Wife did not incur attorney fees to Waterman or the amount of any fees are in dispute. And even if Wife may challenge the total amount of attorney fees that she owes to Waterman, Husband lacks standing to assert that potential dispute as a basis to avoid the imposition of attorney fees. Under the circumstances, we must conclude that the Family Court abused its discretion by setting aside the award of attorney fees on this basis.

In his reply brief, Husband argues that this Court should affirm the Family Court's order setting aside the award of attorney fees due to the absence of any findings that Wife's fees were reasonable. "Where the prevailing party seeks

only to have the judgment affirmed, it is entitled to argue without filing a cross-appeal that the trial court reached the correct result for the reasons it expressed and for any other reasons appropriately brought to its attention." *Commonwealth, Corrections Cabinet v. Vester*, 956 S.W.2d 204, 205-06 (Ky. 1997). As noted above, Husband brought this matter to the attention of the Family Court when he filed his CR 59.05 motion. He also requested more specific findings pursuant to CR 52.02. Finally, as the prevailing party on this issue below, Husband could not have raised this issue in his direct appeal. Therefore, we conclude that he is entitled to raise this issue in response to Wife's cross-appeal from the Family Court's order setting aside the award of attorney fees.

It is well-established that any award of attorney fees is subject to a determination of reasonableness by the Trial Court. *Capitol Cadillac Olds, Inc. v. Roberts*, 813 S.W.2d 287, 293 (Ky. 1991). Our domestic-relations statutes and case law have never required the same level of documentation as required for other awards of attorney fees. But at a minimum, the Family Court must establish a "lodestar" figure, consisting of the counsel's reasonable hours, multiplied by a reasonable hourly rate. *Meyers v. Chapman Printing Co., Inc.*, 840 S.W.2d 814, 826 (Ky. 1992). Once that determination is made, the Family Court must determine the reasonableness of those fees using the *Sexton* factors.

In this case, Winner's affidavit only provided his own hourly rate but did not indicate the number of hours that he expended while representing Wife. Moreover, there was no evidence of the hourly rate or hours billed by Waterman – only the total amount billed by his firm. In the absence of such evidence, the Family Court had no basis to calculate a lodestar figure. Furthermore, the Family Court made no findings under the *Sexton* factors that the fees charged were reasonable.

The Family Court has wide discretion to award attorney fees under KRS 403.220. *Smith*, 556 S.W.3d at 556. But without adequate proof or findings, this Court cannot afford meaningful appellate review of any award. Under the circumstances, we must remand this matter for an additional hearing and findings on the amount and reasonableness of the claimed attorney fees.

## VI. Conclusion

Accordingly, in Appeal No. 2022-CA-0433-MR, we affirm the orders of the Jefferson Family Court with respect to its rulings on dissipation of marital assets and the award of prospective maintenance. We reverse those orders with respect to the Family Court's rulings on retroactive maintenance and the parenting time schedule. We remand those matters to the Jefferson Family Court for additional findings and entry of a new judgment as set forth in this Opinion.

In Appeal No. 2023-CA-0180-MR, we reverse the order of the Jefferson Family Court denying Wife's motion for attorney fees, and we remand that matter to the Family Court for an additional hearing and findings as set forth in this Opinion.

ALL CONCUR.


BRIEFS FOR APPELLANT/CROSS-APPELLEE:

Melanie Straw-Boone
Michele L. McKinney
Louisville, Kentucky

BRIEFS FOR APPELLEE/CROSS-APPELLANT:

Louis P. Winner
Sidney M. Vieck
Louisville, Kentucky